Argued and submitted January 20, affirmed April 12, 1995

Barbara HAYS,
*Plaintiff,*

*v.*

CENTENNIAL FLOORS, INC.,
an Oregon corporation,
John Doe A, John Doe B, and
Housing Authority and Community
Services Agency of Lane County,
*Defendants.*

HOUSING AUTHORITY AND COMMUNITY
SERVICES AGENCY OF LANE COUNTY,
*Cross-claim Plaintiff - Appellant,*

*v.*

CENTENNIAL FLOORS, INC.,
an Oregon corporation,
*Cross-claim Defendant - Respondent.*

(16-92-06667; CA A82418)

893 P2d 564

Karen M. Vickers argued the cause for appellant. With her on the briefs was Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Lisa M. Shickich argued the cause for respondent. With her on the brief was Arnold Gallagher Saydack Percell & Roberts, P.C.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Haselton, Judge.

HASELTON, J.

**HASELTON, J.**

Cross-claim plaintiff, Housing Authority and Community Services Agency of Lane County (Authority), appeals from a judgment in favor of Centennial Floors, Inc., on Authority's cross-claim for indemnity. Authority asserts that the trial court erred in determining that a contractual indemnity clause did not require Centennial to indemnify Authority for costs incurred in settling personal injury claims associated with Centennial's performance of the contract. We affirm.

Authority owns and maintains the Laurelwood Homes housing complex in Florence. In the summer of 1991, Authority contracted with Centennial to replace the tub wraps[1] in each unit, including one rented by Barbara Hays. The construction contract included the following indemnification clause:

"CONTRACTOR [Centennial] agrees that the performance under this contract is at CONTRACTOR'S sole risk and that the CONTRACTOR shall indemnify the [Authority], its commissioners, agents, officers and employees, against, and hold them harmless from, any and all liability for damages, costs, losses and expenses resulting from, arising out of, or in any way connected with this contract, or from CONTRACTOR'S failure to perform fully hereunder, and CONTRACTOR further agrees to defend the [Authority], its commissioners, agents, officers and employees, against all suits, actions or proceedings brought by any third party against them for which CONTRACTOR would be liable hereunder."

In attaching the new tub wraps to the bathroom walls, Centennial used an adhesive that gave off noxious fumes. Hays allegedly was injured when she inhaled the fumes, and she subsequently brought a personal injury action against both Authority and Centennial. She alleged, *inter alia*, claims for negligence against both defendants and a separate claim for violations of the Residential Landlord Tenant Act (RLTA), ORS 90.100 *et seq*, against Authority.

---

[1] At trial, the director of Authority defined a tub wrap:

"[A] tub actually sits in an enclosure with three walls. * * * On those three walls a tub wrap is the material that's placed on those walls to keep water from penetrating that wall. It's a plastic laminate material. It can be ceramic tile."

Hays claimed that both Authority and Centennial were negligent in the following particulars:

"(a)   In using the adhesive AMD-150 in plaintiff's apartment in a situation which the label clearly and prominently warned was inappropriate for the product—that is, in a small, confined, unventilated area.

"(b)   In failing to ventilate plaintiff's bathroom and apartment during and after application of the adhesive, with fans or other devices or by opening windows or doors, despite the label's warning to ventilate.

"(c)   In failing to warn plaintiff of the dangers of the adhesive in any way.

"(d)   In failing to advise plaintiff to ventilate the area or to take other steps to protect herself."

Hays also claimed that Authority, alone, was further negligent in the following particulars:

"(a)   In failing to adequately supervise Centennial Floors in its choice of adhesives and manner of application.

"(b)   In failing to provide plaintiff's bathroom and apartment with adequate ventilation."

Authority cross-claimed against Centennial for indemnity under the construction contract and subsequently settled with Hays for $8,000. The settlement agreement did not specify which claims were settled, much less how much Authority paid for various claims. Authority then proceeded to a trial to the court on its cross-claim for indemnity against Centennial.[2]

The trial court entered judgment for Centennial on the ground that Authority failed to prove that the amounts for which it sought indemnity were within the scope of the contractual indemnity clause. The trial court made the following findings:

"7.   [Authority], separate from [Centennial], settled the claim [Hays] made against it for $8,000 and additionally incurred attorney fees in the amount of $6,064.00 prior to its settlement.

---

[2] Before the trial court issued its findings of fact and conclusions of law on Authority's cross-claim, Hays settled with Centennial and dismissed her claims against it with prejudice.

"8.   A notice of Entry of Covenant and a Stipulated Order of Dismissal and Judgment were thereafter filed in the Lane County Circuit Court on April 12, 1993. In that document, [Authority] and [Hays] gave the Court notice and the Court signed the Judgment that [Hays] executed the Covenant Not to Further Sue or Enforce Judgment to [Authority]. * * * The Covenant does not specify which claim or claims were settled by the payment of the $8,000.

"9.   In the Second Amended Complaint filed by [Hays], there are allegations against [Centennial] and allegations against [Authority] as well as claims made against both.

"10.  In the Second Amended Complaint there are claims made by [Hays] which are outside the scope of the indemnity clause in the contract between [Centennial] and [Authority] which would require [Centennial] to indemnify [Authority]."

The trial court then concluded:

"1.   The Covenant fails to specify as to what claim(s) was discharged by the payment of $8,000 to [Hays]. Because the Second Amended Complaint alleges that as a specification of negligence and statutory liability under the [RLTA] that [Authority] failed to provide a bathroom to [Hays] with adequate ventilation, there is no indemnity obligation under the contract.

"2.   The Indemnity Agreement does not create an obligation that [Centennial] indemnify [Authority] for its own negligence or statutory liability which is beyond the control of [Centennial].

"3.   There is no proof as a matter of law that the monies paid out by [Authority were] paid for claims for which [Centennial] was responsible for [*sic*] under the Indemnity Agreement as apart from [Authority]. Based upon the failure of proof, there is no indemnity obligation under the contract and I find for [Centennial]."

Authority does not challenge the trial court's findings, but alleges that the trial court erred, as a matter of law, in concluding that it was not entitled to indemnity under the contract. Relying on *Travelers Indem. v. American Ins.*, 278 Or 193, 563 P2d 684 (1977), and *Waggoner v. Oregon Auto Ins. Co.*, 270 Or 93, 526 P2d 578 (1974), Authority argues that Centennial's contractual indemnification duty encompassed *all* circumstances in which Authority incurred

expenses that would not have arisen but for Centennial's performance under the contract. In particular, Authority contends that the contractual language ("any and all liability for damages, costs, losses and expenses resulting from, arising out of, or in any way connected with this contract") was so broad as to require indemnity, even if Centennial's performance was faultless and Authority was solely at fault. Applying that broad "but for" construction, Authority asserts that, because it would not have incurred the settlement expenses with Hays if Centennial had never installed the tub wrap in her unit, Centennial must indemnify it for the costs of settlement.

Centennial contends that the indemnity clause is unenforceable to the extent that it purports to require Centennial to indemnify Authority for expenses arising out of Authority's sole negligence. ORS 30.140(2). Consequently, Centennial reasons that Authority had the burden of proving that the amounts for which it sought indemnity related to claims for which it could not have been found solely liable. Centennial asserts that Authority failed to meet that burden.

■     A party seeking indemnity has the burden of proving that "the facts of a case [fall] within the ambit of an indemnity agreement * * *." *Cook v. Southern Pac. Transp. Co.*, 50 Or App 547, 552, 623 P2d 1125, *rev den* 291 Or 1 (1981). To determine whether the trial court erred in holding that Authority did not meet that burden, we must address two issues: (1) Is the indemnity provision unenforceable to the extent it purports to require Centennial to indemnify Authority for Authority's sole negligence? (2) If so, did Authority prove to what extent, if any, the expenses for which it sought indemnity pertained to claims not based on its sole negligence?

■     We first address the scope and enforceability of the contractual indemnity clause. *Travelers* and *Waggoner* arguably support Authority's argument that the broad contractual language requires Centennial to indemnify Authority for expenses arising from Authority's sole negligence. However, those cases were decided before the enactment of ORS 30.140(2). That statute, enacted in 1987, provides:

"[A]ny provision in a construction agreement which requires a person or that person's surety or insurer to

indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused by the sole negligence of the indemnitee is void."

The indemnity clause of the construction contract between Authority and Centennial falls within ORS 30.140. Although that clause does not expressly state that Centennial must indemnify Authority for Authority's own sole negligence, Authority admits that its language is sufficiently broad — "any and all liability * * * arising out of, or in any way connected with this contract" — that it has, or can have, that effect. Consequently, ORS 30.140(2) voids the clause to the extent that its application would require Centennial to indemnify Authority for its own sole negligence.[3]

■ We next consider whether, despite the partial unenforceability of the indemnity provision, Authority was nevertheless entitled to indemnity because of the nature of the claims that were settled. In particular, Authority argues that, even if it could not be indemnified for its sole negligence, it was entitled to indemnity because the settlement pertained only to claims on which Centennial could have been held at least partially liable. The trial court disagreed, and so do we.

Paragraph 8(b) of Hays' second amended complaint alleged that Authority, alone, was negligent in "failing to provide plaintiff's bathroom and apartment with adequate ventilation."[4] The essence of that allegation is that Authority

---

[3] We note that the legislative history of 30.140(2) indicates that the drafters intended that provision to apply to public agencies as well as private parties. Immediately before the Interim Joint Task Force on Liability Insurance voted to recommend passage of ORS 30.140(2), Representative Springer, a member of the task force, asked how the provision would affect public agencies who often require contractors to indemnify the agencies for the negligence of agency employees who inspect construction sites. Wendell E. Gronso, another member of the task force, responded:

"This is only the indemnification when the indemnifying party is not negligent at all, that somebody who is solely negligent is passing the buck on somebody else. And it does not bother me whether it be a public agency or somebody else, a public agency shouldn't be able to require in their contract that somebody else is going to pick up the tab for their neglect when they're solely the culprit."

The task force then voted to recommend the provision without objection.

[4] Hays also alleged that Authority, alone, was negligent in "failing to adequately supervise Centennial Floors in its choice of adhesives and manner of application." A trier of fact could not have found Authority liable on that basis unless it had first found that Centennial had negligently applied the adhesive. *See Restate-*

failed to *design* and *construct* Hay's bathroom and apartment with adequate ventilation.[5] Given that allegation, a trier of fact could have found that Centennial took reasonable steps to ventilate Hays' apartment, but that the apartment design prevented ejection of the fumes. Testimony received during the trial of Authority's indemnity claim demonstrates that such a result was reasonably plausible. During the trial, Stephen Pardovich, the owner of Centennial, testified that during the last 10 years he had installed, without complaint, approximately 200 to 300 tub wraps using the same adhesive that he used in Hays' unit. He also testified that he took the following measures to ventilate the Laurelwood Homes units:

> "[O]n each unit * * * we'd remove [the old tub wrap], and before we started spreading adhesive we would—the front door was always open, the vent in the bathroom was always on, and the back door was open. And into the living room— there was two doors into the living room. And also part of the time some of the windows were open. * * * And we—we ventilated the units while we were working on them and after we finished we'd ventilate them for several hours to make sure that any fumes in the units were—would be gone."

Had Hays proceeded to trial, a trier of fact might reasonably have found that, given Pardovich's trouble-free history with the tub wrap adhesive and his efforts to ventilate the Laurelwood Homes units, Centennial was not negligent and that Hays' injuries were caused by Authority's sole negligence in failing to design and construct the units with adequate ventilation.

Thus, the settlement encompassed at least one claim that reasonably implicated Authority's sole negligence. Because the indemnity provision was unenforceable to the

---

*ment (Second) Torts* §§ 419 and 420 (1965). Therefore, ORS 30.140(2) would not prevent Authority from seeking indemnity on that claim.

[5] Our construction of that allegation, which coincides with the trial court's, derives, in part, from the fact that the Hays' second amended complaint alleged in the previous paragraph 7(b) that both Authority and Centennial were negligent in "failing to ventilate [Hays'] bathroom and apartment during and after application of the adhesive, with fans or other devices or by opening windows or doors." Thus, paragraph 8(b)'s "inadequate ventilation" allegation as to Authority alone reasonably pertained to qualitatively different conduct from that alleged in paragraph 7(b).

extent it purported to oblige Centennial to indemnify Authority for its sole negligence, ORS 30.140(2), Authority had the burden of proving the extent to which the amounts, including settlement payments, for which it sought indemnity pertained to claims other than those relating to its sole negligence — *i.e.*, those for which Centennial could have been at least partly liable to Hays. *Cook*, 50 Or App at 552. It failed to do so. At trial, Authority made no effort to show which claims were settled and for what amount of money. In particular, Authority did not prove that the settlement did not pertain to Hays' claim for negligent design and construction of the bathroom.

The trial court correctly concluded that Authority failed to prove its entitlement to indemnity from Centennial.

Affirmed.