Argued and submitted May 24, 2011, reversed and remanded on claims for breach of contract and indemnity; otherwise affirmed. Motion for remand denied December 4, 2013, petition for review allowed May 29, 2014 (355 Or 567)

MONTARA OWNERS ASSOCIATION,
an Oregon non-profit corporation,
*Plaintiff,*

*v.*

LA NOUE DEVELOPMENT, LLC,
an Oregon limited liability company; et al,
*Defendants.*

LA NOUE DEVELOPMENT, LLC,
an Oregon limited liability company,
*Third-Party Plaintiff-Appellant,*

*and*

Mark LA NOUE,
an individual,
*Third-Party Plaintiff,*

*v.*

SUTTLES CONSTRUCTION, INC.,
an Oregon corporation;
and Gordon Harding, an individual,
dba Gordon Harding Construction,
and MCM Architects, PC,
an Oregon professional corporation; et al,
*Third-Party Defendants,*

*and*

Vasily A. SHARABARIN,
an individual, dba Advanced Construction,
*Third-Party Defendant-Respondent.*

EVANS CONSTRUCTION SIDING CORPORATION,
an Oregon corporation,
*Fourth-Party Plaintiff,*

*v.*

DAVE BURGESS CONSTRUCTION, INC.,
an Oregon corporation; et al,
*Fourth-Party Defendants.*

DAVE BURGESS CONSTRUCTION, INC.,
an Oregon corporation,
*Fifth-Party Plaintiff,*

*v.*

Raul HERNANDEZ
and Carlos Hernandez, individuals,
dba Hernandez Brothers, a partnership; et al,
*Fifth-Party Defendants.*

LA NOUE DEVELOPMENT, LLC,
an Oregon limited liability company;
and Mark La Noue, an individual,
*Plaintiffs,*

*v.*

MCM ARCHITECTS, PC,
an Oregon professional corporation,
*Defendant.*

Multnomah County Circuit Court
051213487, 061213628; A140771

317 P3d 257

Leta E. Gorman argued the cause for appellant. With her on the briefs were Emilie K. Edling and Bullivant Houser Bailey PC.

Thomas M. Christ argued the cause for respondent. With him on the brief were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

Nakamoto, J., concurring.

## WOLLHEIM, J.

The dispute here is a familiar one: a construction defect action by a homeowners association against the developer and general contractor, who then filed third-party complaints against the multiple subcontractors. Most, but not all, of the claims settled. The claims of the developer and general contractor, La Noue Development, LLC (La Noue), against several subcontractors went to trial. Although La Noue prevailed, the jury awarded limited damages. This appeal relates to La Noue's claims against one subcontractor, Sharabarin, dba Advanced Construction, who installed the siding and trim on four of the townhouses that are the subject of this action. La Noue raises six assignments of error on appeal. Because we conclude that instructional error entitles La Noue to a new trial limited to damages, we reverse and remand for that reason and do not address La Noue's second assignment of error, relating to the trial court's denial of its motion for a new trial based on newly discovered evidence. However, we address the other assignments of error because those issues could arise on retrial.

La Noue was the developer and the general contractor of the Montara townhouses. La Noue developed the property between 1999 and 2004, and Sharabarin began his work in March 2001. The Montara townhouses consist of nine buildings with three or four units in each building. In 2005, the Montara Owners Association (homeowners) filed a complaint alleging multiple claims against La Noue, seeking to recover for property damages caused by defects in the design and construction of the Montara townhouses. In their breach of contract claim against La Noue, the homeowners alleged that La Noue had contracted with subcontractors to employ and supervise all labor for construction and maintenance of the 35 Montara townhouse units. The homeowners alleged that the building envelope systems failed in all nine buildings, causing water intrusion, water damage, rot, and structural and other physical damage to the units as a result of faulty workmanship, improper or defective materials, improper construction, and noncompliance with building codes. The homeowners further alleged that the

defects were so pervasive that *all* siding, windows, and roofs would have to be removed and repaired. The homeowners asserted a variety of tort and contract claims and a claim under the Unlawful Trade Practices Act, ORS 646.605 to 646.656, against La Noue. The homeowners sought close to $7.5 million in damages, prejudgment interest for the cost of repairing the buildings, and other unspecified damages, including special assessments, loss of profits on the townhouses that had or would be sold, and expenses for loss of use of the townhouses.

La Noue generally denied the homeowners' allegations supporting their claims, and, in response to the claims of damage to the buildings, La Noue brought third-party claims against, among others, more than 20 subcontractors that had provided excavation, fireplaces and chimneys, handrails, framing, gutters, roof trusses, roofing, siding, and other services. Sharabarin is one of those subcontractors, having installed siding on buildings 10 through 13. La Noue alleged negligence, breach of contract, common law and contractual indemnity, and contribution claims against all the subcontractors. Specifically, against Sharabarin and the other siding subcontractors, La Noue alleged a strict products liability claim. For its breach of contract and negligence claims, La Noue alleged that Sharabarin and other subcontractors breached their contractual obligations and failed to perform their work with reasonable care, in a manner consistent with local construction standards, or in accordance with industry and manufacturers' standards, as described in the homeowners' complaint. For its indemnity and contribution claims, La Noue alleged that the subcontractors caused some or all of the damages to the buildings and were responsible for the homeowners' damages; therefore, if La Noue was determined to be responsible for the homeowners' damages, the subcontractors should pay La Noue's damages, because the subcontractors' work was the cause of the homeowners' damages. La Noue also sought its attorney fees and costs, as well as unspecified equitable relief. La Noue settled with the homeowners by paying them approximately $5 million, and La Noue settled with most of the third-party defendants.

La Noue then filed a second amended third-party complaint limited to five remaining nonsettling subcontractors, including Sharabarin. Sharabarin's amended answer and affirmative defenses alleged that he performed all work in accordance with the plans and specifications that La Noue and its architects provided to him, and that the work Sharabarin performed was under the supervision and authorization of La Noue's site superintendents. Thus, Sharabarin argued, he was not liable in any respect. La Noue replied, denying Sharabarin's amended answer and affirmative defenses.

As a result of various pretrial rulings, the only claim the trial court submitted to the jury was La Noue's breach of contract claim against Sharabarin and two framers. As relevant to this appeal, before trial, the court granted summary judgment to Sharabarin on La Noue's contractual indemnity claim, ruling that the indemnity clause in La Noue's contract with Sharabarin was void under ORS 30.140.[1]

Trial began in September 2007. At trial, La Noue alleged damages of over $2 million. Sharabarin moved for a directed verdict limiting damages on the breach of contract claim. The court granted, in part, the motion to limit damages. During trial, two additional subcontractors settled with La Noue, leaving only the claims against Sharabarin and two framers. The jury found in favor of La Noue on the breach of contract claim against Sharabarin and the two remaining framers, and it awarded damages against Sharabarin in the amount of $43,711 and against the remaining framers in the amount of $102,101.

In a bench trial three weeks later, the trial court ruled that La Noue could not recover its attorney fees as consequential damages. Meanwhile, the homeowners began repairs. In November 2007, the homeowners were notified of a $900,000 shortfall for repairs. La Noue filed a motion for a new trial under ORCP 64, alleging additional damages, including window damage, damages resulting from a requirement by the City of Portland for building permits, and damages from other unforeseen difficulties causing

---

[1] The motion for summary judgment was filed by a different subcontractor but was joined by all subcontractors.

an extension of the remediation efforts. The court denied La Noue's motion for a new trial, and La Noue filed this appeal. The two remaining framers settled with La Noue while this appeal was pending and La Noue's appeal now solely concerns its claim against Sharabarin.

## I. JURY INSTRUCTION

We begin with La Noue's assertion in its first assignment of error that the trial court erred in instructing the jury on the measure of damages with regard to the breach of contract claim. The parties submitted proposed jury instructions to the trial court. Sharabarin's requested instruction on the measure of damages tracked the language in Uniform Civil Jury Instruction (UCJI) 65.18 for expectation, or "benefit of the bargain," damages:

> "You can award money for those damages that arise naturally and necessarily from the breach of contract and would place the plaintiff in the same position as if the contract had not been breached."

In contrast, relying on *Beik v. American Plaza Co.*, 280 Or 547, 555-56, 572 P2d 305 (1977), and *Newlee v. Heyting*, 167 Or 288, 117 P2d 829 (1941), the framer subcontractors proposed a significant modification to UCJI 65.18. They requested an instruction on contract damages that would allow the jury to award La Noue damages based on either the cost of repair or, in the event of "economic waste," the diminished value of the buildings:

> "If one party breached the contract, then you must decide if the breach caused a loss and, if so, how much money should be paid.
>
> "The mere fact that I am talking about money does not mean that you should or should not award any money.
>
> "The cost of replacement or repair is the correct measure of damage for defects in construction work unless that remedy generates undue economic waste. If you find that, except for technical, nonsubstantial, or immaterial departures by the defendants from the plans and specifications, the [framing] [siding] work is satisfactory, and that an award to La Noue for claimed repair costs would result in gross economic waste, the proper measure of damages is not the cost of repair but rather the difference in the value

of Montara as built and what its value would be if it had been built according to the contracts."

At the close of evidence, the court instructed the jury that, as to damages, it could choose between the cost of repair and the diminished value of the properties, depending on whether the jury found "undue" or "gross" economic waste. The court's jury instruction on the measure of damages was worded almost exactly as requested by the framer subcontractors and pertained to both the framing and the siding work:

"If one party breached the contract, then you must decide if the breach caused a loss and, if so, how much money should be paid.

"The mere fact that I am talking about money does not mean that you should or should not award any money.

"The cost of replacement or repair so as to make the building conform to the plan is the correct measure of damage for defects in construction work unless that remedy generates undue economic waste. If you find that, except for technical, nonsubstantial, or immaterial departures by the defendants from the plans and specifications, the framing or siding work is satisfactory, and that an award to La Noue Development, L.L.C. for claimed repair costs would result in gross economic waste, the proper measure of damages is not the cost of repair but rather the difference in the value of Montara as built and what its value would be if it had been built according to the subcontracts."

The court did not instruct the jury regarding what "economic waste" meant. La Noue took exception to the instruction.

On appeal, La Noue makes two arguments concerning the jury instruction on damages, asserting that the instruction misstated the applicable law and should not have been given due to a lack of evidence in the record to support the jury instruction.[2] During oral arguments before

[2] There is some dispute relating to preservation of those arguments. Sharabarin contends that the only exception on the record is a post-instructional objection by La Noue's attorney to "Instruction No. 26 on damages." La Noue contends that the issue was in fact raised but, because of a problem with the record on appeal (a recording device problem not caused by La Noue), a portion of the record concerning the parties' objections and argument on jury instructions is missing. To the extent that preservation is an obstacle, La Noue asks this court

this court, it became apparent that La Noue was contending that there should be an exception to the usually applicable economic waste doctrine in the context of a dispute between a general contractor and a subcontractor. Alternatively, La Noue asserts that there was no evidence at trial from which the jury could have determined economic waste or diminished value because Sharabarin failed to produce such evidence. Sharabarin responds that the jury instruction was an accurate statement of the law and that he carried his burden of proving that the cost of repair would be disproportionate to the ends attained.

We review a trial court's decision whether to give an instruction for errors of law. *See State v. Barnes*, 329 Or 327, 333-34, 986 P2d 1160 (1999) (applying that standard of review). For the reasons that follow, we agree with La Noue that the court erred in instructing the jury. Assuming that Sharabarin might have been able to present to the jury an alternative to normal expectation damages based on the economic waste doctrine, he bore the burden of proving the amount of damages the jury should award if it applied that doctrine, namely, the diminished value of the townhouses. *McComb v. Cogswell*, 140 Or 676, 15 P2d 716 (1932).[3] Sharabarin did not meet his burden due to a lack of evidence, and there was, consequently, no basis in the evidence to give the instruction concerning economic waste or diminished value.

---

to order a new trial. *See* ORS 19.420(3) ("Whenever it appears that an appeal cannot be prosecuted, by reason of the loss or destruction, through no fault of the appellant, of the reporter's notes or audio records, or of the exhibits or other matter necessary to the prosecution of the appeal, the judgment appealed from may be reversed and a new trial ordered as justice may require."). Under the unique circumstances in this case, we conclude that the correctness of the jury instruction was sufficiently raised and neither the trial court nor Sharabarin will be surprised by this court's consideration of the jury instruction issue on appeal. Therefore, we deny La Noue's motion under ORS 19.420(3) to remand for a new trial. We proceed to the merits of La Noue's first assignment of error.

[3] While *McComb* is not directly on point, it supports the conclusion that, in a breach of contract claim where it is alleged that a party failed to build a building in accordance with the contract, the measure of damages is the difference between the value of the building as constructed and what the value of the building would have been if built according to the contract. 140 Or at 679. In *McComb*, where the parties sought damages based on that measure and failed to establish by competent evidence the amount of those damages, they were not entitled to recover any damages. *Id.* We infer that a party seeking to limit damages based on economic waste has the burden of producing evidence establishing the value of the building as actually built.

## A.  *An Incorrect Statement of the Law*

"Under Oregon law, there are two different types of error respecting jury instructions: (1) error in the failure to give a proposed jury instruction, and (2) error in the jury instructions that actually were given." *Williams v. Philip Morris Inc.*, 344 Or 45, 55, 176 P3d 1255 (2008). This case concerns the latter type of instructional error. When we are deciding "whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately." *State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006). "[A]s a general rule, the parties in a civil action are entitled to jury instructions on their theory of the case if their requested instructions correctly state the law, are based on the current pleadings in the case, and are supported by evidence." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998).

In a breach of contract claim, expectation damages— that is, the amount of a party's expectancy had the contract been fulfilled—are recoverable, if proven. *Metropolitan Property & Casualty v. Harper*, 168 Or App 358, 369, 7 P3d 541 (2000). "The rule in Oregon is that the cost of replacement or repair is the correct measure of damage for defects in work unless that remedy generates undue economic waste." *Beik*, 280 Or at 555. If the cost of repair is disproportionate to the value of the project, the court will look at the standard of difference in value. *Id.* In that situation, the proper measure of damages is the difference between the value of the project as properly constructed and its value as actually constructed. *Id.* at 556 n 3.

La Noue contends that, as a general contractor, it was entitled to obtain the cost of replacement or repair from Sharabarin, and that the trial court erred by instructing the jury that, if it concluded that "cost of repair" damages would generate "undue economic waste," the correct measure of damages on La Noue's breach of contract claim against Sharabarin is to be based on the diminished value of the townhouses. La Noue initially asserts that the instruction given was categorically incorrect because the cost of replacement or repair is the correct measure of damages. As previously noted, La Noue asks this court to create an exception

to the economic waste doctrine where the dispute is between a general contractor and a subcontractor.

La Noue relies on *Metropolitan Property & Casualty*, 168 Or App at 369, and cases from other jurisdictions, for the proposition that a general contractor is entitled to recover from a breaching subcontractor the cost of work the general contractor was required to perform as a result of the subcontractor's defective performance. Although *Metropolitan Property & Casualty* contains a general discussion of contract remedies, La Noue's cases from other jurisdictions involve construction contract damages and support La Noue's argument. For example, in *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 143 Wash App 345, 177 P3d 755, 762, *rev den*, 196 P3d 139 (2008), the general contractor was allowed to recover the cost to repair and replace defects within the subcontractor's scope of work, even when the repairs necessitated removal of work by other subtrades.

La Noue further argues that the doctrine of economic waste is simply inapplicable on these particular facts. La Noue explains that it had settled with the homeowners, and the homeowners were, in fact, repairing their property. Because the purpose of the economic waste doctrine is "to limit damages recoverable for a contractor's defective work to those costs necessary to achieve the owner's contract 'expectancy' and design intent without unjust enrichment or betterment of the work," Philip L. Bruner and Patrick J. O'Connor, Jr., 6 *Bruner and O'Connor on Construction Law* § 19:30 (West 2010), La Noue contends that there was no chance of unjust enrichment and the economic waste doctrine simply did not apply. Thus, in La Noue's view, the jury instruction on the measure of damages was an incorrect statement of the law. La Noue further asserted at oral argument that, if a subcontractor can raise the economic waste doctrine in a dispute with a general contractor who has settled, there is no motivation for the subcontractor to engage in settlement negotiations.

Sharabarin responds that the instruction correctly stated Oregon law. Again, that instruction allowed the jury to award damages based on the diminished value of the buildings if the jury found that, "except for technical,

nonsubstantial, or immaterial departures by the defendants from the plans and specifications, the framing or siding work is satisfactory, and that an award to [La Noue] for claimed repair costs would result in gross economic waste." He argues that La Noue could receive expectation damages, the normal contract remedy, only if the remedy was prudent—in other words, if the remedy would not create economic waste. Sharabarin explains that, because "economic waste" refers either to a cost of repair that is "disproportionate to the end to be attained" or to a defect that cannot be fixed "without endangering unduly other parts of the building," *Beik*, 280 Or at 556 n 3, the instruction in this case accurately reflected Oregon law. Sharabarin also argues that there was some evidence to support his theory that awarding the cost of repairs would result in economic waste.

La Noue responds that different legal principles apply to determine damages in contract disputes between general contractors and subcontractors. La Noue urges that we adopt a *per se* rule that a general contractor is immune from a subcontractor's contention that, due to gross economic waste, damages must be measured by the diminished value of the structures affected by the subcontractor's substandard work. We acknowledge that, as La Noue points out, commentators or treatises on contract law provide that the proper rationale for the economic waste doctrine is to prevent unjust enrichment. *See* Carol Chomsky, *Of Spoil Pits and Swimming Pools: Reconsidering the Measure of Damages for Construction Contracts*, 75 Minn L Rev 1445 (1991); J. Calamari & J. Perillo, *The Law of Contracts* § 14-9 (2d ed 1977). However, the problem for La Noue is that it does not take issue with any particulars of the jury instruction the trial court gave. For example, La Noue does not contend that the absence of any definition of "economic waste" in the instruction, much less one that was consonant with La Noue's understanding of that term, rendered the instruction incorrect on the law. More importantly, we are not persuaded by La Noue's argument that the contractor and subcontractor relationship is so unique that we should create a *per se* rule concerning how damages are determined. Accordingly, we reject La Noue's assignment of error in which it contends that the damages instruction was a misstatement of the law.

B. *The Evidence at Trial Did Not Support the Giving of the Instruction*

Second, La Noue argues that, even if the instruction correctly stated the law in the abstract, it was erroneous to give it in this case in light of the evidence at trial. La Noue contends that there was no evidence at trial from which the jury could determine economic waste or diminished value. Viewing the evidence "in the light most favorable to the establishment of the facts necessary to require giving the requested instruction," *Hernandez*, 327 Or at 101 n 1, we conclude that La Noue is correct.

La Noue asserts a three-part argument that there was no evidence that would justify giving the instruction. Because we find it dispositive, we discuss only one part of La Noue's argument, which is that there was no evidence at trial of the diminished value of the townhouses as a result of the defects.

Sharabarin does not respond directly to La Noue's characterization of the evidence at trial. Indeed, Sharabarin does not, and cannot, argue that there was evidence at trial establishing the difference between the value of the buildings as constructed and as they should have been constructed. Instead, Sharabarin contends that we must affirm because La Noue bore the burden of proof, at all times, to establish its damages and cannot now complain that the evidence was insufficient. Sharabarin also again argues that there was some evidence of economic waste to support the giving of the damages instruction.

"It is well settled that [a] plaintiff is not required to prove the amount of his damages with mathematical certainty. [The plaintiff] need only establish the fact of damage and evidence from which a satisfactory conclusion as to the amount of damage can be reached." *North Pacific Lbr. v. Moore*, 275 Or 359, 366, 551 P2d 431 (1976). However, because Sharabarin, as the defendant, was arguing for an instruction on a different measure of damages, the diminished value of the townhouses, he had the burden to show that there was a sufficient evidence to establish the amount of damages under that measure. Here, however, there was no evidence in the record that would allow a jury to reach

any conclusion as to the diminished value of the townhouses. Testimony by Sharabarin's expert, Scott, is devoid of an assessment of the diminished value of the units as built. His testimony does not address the value of the units. Instead, Scott testified that the scope of Sharabarin's responsibility was but a fraction of the scope of the repairs needed— without identifying what that fraction might be.[4] No other witness provided evidence of the diminished value of the townhouses. Without such evidence, Sharabarin was not entitled to an instruction on the diminished value of the buildings or units as an alternative measure of damages. Because there was no evidence of the diminished value of the Montara buildings as a result of Sharabarin's breach of contract, the trial court erred in giving a damages instruction that was not supported by evidence in the record.

We further conclude that the instructional error was not harmless. "[W]hen a trial court incorrectly instructs the jury on an element of a claim or defense and when that incorrect instruction permits the jury to reach a legally erroneous result, a party has established that the instructional error substantially affected its rights * * *." *Wallach v. Allstate Ins. Co.*, 344 Or 314, 329, 180 P3d 19 (2008). Here, the jury instruction permitted the jury to speculate as to the loss in value of the buildings as a consequence of Sharabarin's breach of the contract and to reach a "legally erroneous result." Accordingly, we reverse and remand for a new trial on damages on the breach of contract claim.[5]

---

[4] At trial, La Noue's expert testified that it would cost approximately $2 million to repair Sharabarin's defective work on the townhouses. In response, Sharabarin's expert, Scott, contested the damages. In particular, Scott disagreed with La Noue's expert that Sharabarin was responsible for nailing deficiencies in the lap siding and that all of the damage caused to the parapets was Sharabarin's responsibility; Scott further stated that some of the problems with Sharabarin's work were caused by earlier work, presumably by other subcontractors, that had not been done correctly. Scott testified that there was a $500,000 disparity between his estimate of repair costs for the siding and La Noue's estimate. Scott testified that instead of complete removal and replacement, "targeted repairs" were possible. He estimated that the total repairs for the buildings would cost approximately $1 million and approximately five percent of those repairs addressed areas within Sharabarin's responsibility.

[5] Because we remand for a new trial, we do not address La Noue's second assignment of error, which concerns whether there was any evidence in the record of gross economic waste.

## II. DIRECTED VERDICT

La Noue's fourth and fifth assignments of error challenge the trial court's directed verdict limiting the amount of damages that La Noue could seek from Sharabarin on its breach of contract claim.[6] The trial court's ruling on motions for directed verdict effectively capped La Noue's potential damages against Sharabarin at $1,862,666, although La Noue had alleged that its total damages were $5 million and that its damages solely as a result of Sharabarin's breach were at least $2 million; the court instructed the jury that "[a]ny damages awarded for work done by * * * Sharabarin * * * must not exceed the amount of $1,862,666." Sharabarin responds that, because the jury found $43,711 in damages, the fact that the court limited recovery to $1.86 million was harmless. We agree with La Noue and, as explained below, conclude that the trial court erred by giving Sharabarin the benefit of amounts La Noue received in settlements from other subcontractors; on remand, La Noue is entitled to seek the full amount of its alleged damages as a result of Sharabarin's breach of contract.

La Noue's claims for damages are complicated by the role of its insurer, Zurich Financial Services (Zurich), in the collection of payments from the settling subcontractors and Zurich's allocation of payments to the homeowners from Zurich's affiliate insurance companies and the trust accounts established by La Noue's attorneys for that purpose. Against La Noue's asserted damages of $5 million, the trial court granted a partial directed verdict reducing the amount of damages the jury could award La Noue on the breach of contract claim by $1.304 million, the entire amount collected from settling subcontractors. In addition, as to Sharabarin, the trial court granted a partial directed verdict reducing the amount of damages the jury could award La Noue by $833,333, the portion of La Noue's settlement with the homeowners that was paid by Zurich for a period of time before Sharabarin began work on his part of the Montara project in March 2001. Those offsets to the amount of damages that La Noue could seek from Sharabarin, $1.304 million and $833,333, were in addition

---

[6] Because this issue could arise on retrial, we address it here.

to a $1 million reduction that La Noue does not challenge on appeal.[7] Therefore, in total, the trial court's rulings pared down La Noue's potential damages from $5 million—the cost of the settlement with the homeowners—to $1,862,666. Because La Noue's claim of damages against Sharabarin exceeded $2 million, that meant that La Noue could not recover its full damages from Sharabarin. La Noue challenges the trial court's ruling on the $1.304 million offset in its fourth assignment of error, and its ruling on the $833,333 offset to damages in La Noue's fifth assignment of error. For the reasons explained below, we agree with La Noue's fourth assignment of error and reject its fifth assignment of error.

The relevant facts, viewed in a light most favorable to La Noue, the party opposing the motion for directed verdict, *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.,* 323 Or 116, 118, 914 P2d 682 (1996), are as follows. La Noue's insurer, Zurich, determined that there was coverage for the homeowners' claims under La Noue's policies with Zurich. Zurich decided that there was coverage for four policy years: April 25, 1999, to April 25, 2000; April 25, 2000, to April 25, 2001; April 25, 2001, to April 25, 2002; and April 25, 2002, to April 25, 2003. Zurich agreed to pay $4 million of the $5 million settlement with the homeowners, pursuant to the policies held by La Noue. Zurich was responsible for that amount regardless of whether there was any recovery of damages from subcontractors by way of settlement or after a trial.

Zurich paid its $4 million obligation through a series of checks from various affiliate insurance companies that covered La Noue's policies. Zurich directed the settling subcontractors to send settlement payments to La Noue's attorneys, who collected the settlement amounts from the other subcontractors in a trust account and issued payment of those amounts on Zurich's behalf to the homeowners. The sum of the checks issued from the attorneys' trust account and the checks issued by Zurich equaled $4 million. Zurich's direct payments consisted of four checks. Zurich, on behalf

---

[7] The trial court reduced the amount of damages the jury could award La Noue by $1 million because that amount was paid by an insurer that provided separate coverage for the directors and officers of La Noue Development, LLC.

of Assurance Company of America, issued a check in the amount of $833,333. The check stub indicates a date of loss within the policy period from April 1999 to April 2000. On behalf of Maryland Casualty Company, Zurich issued a second check in the amount of $833,333; the check stub indicates a date of loss on a policy covering the time period from April 2000 to April 2001. Zurich's third and fourth checks, also written on behalf of Maryland Casualty Company, were in the amount of $833,333 and $196,000. The check stubs indicate a date of loss for the policy covering the time period from April 2001 to April 2002. However, Zurich's major claims unit consultant testified that the notations on the check stubs were not always correct and that sometimes Zurich reallocated losses to the proper policies. Sharabarin began working on his part of the project in March 2001, which is after the time period covered by some of the insurance policies.

At the close of La Noue's evidence at trial, Sharabarin moved for a directed verdict on damages. The court reserved decision until the close of all the evidence. At the close of all the evidence, Sharabarin renewed its motion for a directed verdict and requested dismissal of La Noue's breach of contract claim and partial directed verdicts as to portions of the damages that La Noue could seek from the jury. Because the trial court allowed the breach of contract claim to go to the jury, the court implicitly denied Sharabarin's motion seeking outright dismissal of the breach of contract claim. However, the trial court granted two of Sharabarin's motions directed to portions of the damages La Noue claimed.

As relevant to this appeal, Sharabarin first contended that, as to the monies received from the settling subcontractors, Zurich had no right of subrogation—that is, it had no right to stand in La Noue's shoes and collect those amounts, because the settlement amounts were paid to the homeowners directly, not by Zurich, and because Zurich had failed to properly demonstrate its right to subrogation. Sharabarin also argued that he should not be required to reimburse Zurich for any amounts that subcontractors had already paid because he was not responsible for those losses. The trial court agreed with Sharabarin that he was entitled to an offset of $1.304 million, the total amount the settling

subcontractors paid, against the $5 million settlement with the homeowners, and the trial court granted Sharabarin's motion for a directed verdict as to that part of La Noue's claim. La Noue assigns error to that ruling in its fourth assignment.

The trial court also concluded that La Noue could obtain damages from Sharabarin only to the extent that Zurich paid settlement funds to the homeowners on policies that covered the time period that Sharabarin worked on the property, that is, work performed beginning March 2001. The trial court granted Sharabarin's motion for a directed verdict as to $833,333 of La Noue's claimed damages because it concluded that La Noue's insurer paid that amount on an Assurance Company policy that was in effect for a time period before Sharabarin's commencement of work on the Montara buildings. La Noue assigns error to that ruling in its fifth assignment.

This court reviews the grant of a directed verdict for errors of law. *GPL Treatment,* 323 Or at 118. A directed verdict is proper if the pleadings are not sustained by the evidence or reasonable people could draw but one conclusion from the evidence. *Foster v. Schnell Refrigeration Co.,* 280 Or 411, 413-14, 571 P2d 497 (1977).

As to the fourth assignment of error, La Noue asserts multiple arguments about why the trial court erred in determining that Zurich could not recover the $1.304 million recovered from the other settling subcontractors. La Noue contends that it was entitled to repair or expectation damages from Sharabarin, who was liable for the full amount of the damages he caused by his own breach; what other subcontractors paid to settle claims for the separate damages they had caused to the buildings by virtue of breaching their own contracts was immaterial. In addition, La Noue contends that there was, at least, a factual question regarding whether Zurich had paid that amount. Therefore, La Noue concludes that the trial court erred when it granted a directed verdict that reduced Zurich's potential recovery by the amounts the settling subcontractors had paid. For his part, Sharabarin maintains that Zurich did not pay the homeowners the amounts that the settling subcontractors had paid.

We conclude that the trial court erred in reducing the total amount that Zurich could recover through subrogation by the settlement amounts Zurich received from other subcontractors. The uncontroverted evidence was that Zurich had paid $4 million to settle with the homeowners. The fact that Zurich chose to send direct payments from the settling subcontractors to an attorney trust account and to have some of the settlement payments to the homeowners paid from that account, as opposed to another bank account containing Zurich's funds, does not change Zurich's $4 million settlement payment to the homeowners.

Nor did Zurich's receipt of settlement payments from other subcontractors, who performed other work on the Montara buildings, offset damages that Sharabarin caused by breaching his contract with La Noue. The evidence at trial established that Sharabarin was the siding subcontractor on a group of the Montara buildings. Sharabarin has not articulated any factual basis to conclude that his work and the damages he caused as a result of his breach of contract were duplicative of the work or damages caused by other subcontractors who settled with La Noue. In fact, at trial, Sharabarin acknowledged that there was no evidence that the settlement amounts paid by other subcontractors was for damages that Sharabarin might have caused. Thus, La Noue should have been allowed to recover its damages from Sharabarin—alleged to be in excess of $2 million— without regard to what other subcontractors paid to settle claims with La Noue.

Turning to the fifth assignment of error, La Noue challenges the directed verdict as to the $833,333 payment under the Assurance Company policy, which covered the period from April 1999 to April 2000. La Noue contends that there was no evidence to establish the significance of Zurich's internal decisions to allocate the settlement obligation with the homeowners among La Noue's policies, particularly as to the time period that a check was intended to cover. Sharabarin, however, points to the fact that the Assurance Company policy provided coverage for a timeframe before he began work on the Montara buildings in March 2001 and to Zurich's check on behalf of Assurance Company, which it appears was written for losses during

the April 1999 to April 2000 period. That evidence, we conclude, supports the trial court's ruling, because Sharabarin could not have been responsible for covered losses during that timeframe. We also reject La Noue's suggestion that Zurich should be able to recover for payments it made for losses during a time period when Sharabarin did not perform work on the buildings to encourage settlements. *See Colonial Penn Ins. Co. v. Aery*, 112 Or App 87, 89, 827 P2d 933 (1992) ("'Subrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer.' 16 *Couch On Insurance* 75, § 61.1 (2d ed 1983).").

La Noue sought over $2 million in damages at trial, which the trial court capped at $1,862,666 after making offsets of $1 million, $1.304 million, and $833,333 from the $5 million settlement with the homeowners. Because we conclude that the $1.304 million offset was erroneous, the cap on damages set by the trial court is in excess of $2 million ($1,862,666 plus $1,304,000 totals over $2 million). Therefore, on remand for a new trial on damages, La Noue is entitled to seek the full amount of the over $2 million in damages it alleged that Sharabarin caused.

## III. INDEMNITY

In its third assignment of error, La Noue asserts that the trial court erred in granting Sharabarin's motion to dismiss La Noue's contractual indemnity claim on the ground that ORS 30.140 renders the parties' contractual indemnification agreement void in its entirety. La Noue contends that the court did not correctly interpret ORS 30.140 and that, under the language of the statute, the indemnity clause is not void but merely unenforceable in part. Sharabarin asserts that the trial court correctly interpreted ORS 30.140 and, therefore, properly entered summary judgment against La Noue on its indemnity claim against Sharabarin.

The indemnity clause in the La Noue/Sharabarin subcontract provided:

"[Sharabarin] specifically and expressly agrees to indemnify and save harmless [La Noue], its officers, agents and

employees, from and against any and all suits, claims, actions, losses, costs, penalties and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to [Sharabarin's] performance of the subcontract, whether or not caused in part by [La Noue], [its] employees or agents, but excepting that caused by the sole negligence of [La Noue], [its] employees or agents."

Under the indemnity clause, Sharabarin was required to indemnify La Noue for any loss arising out of Sharabarin's work "whether or not caused in part by" La Noue itself, except if the loss was caused by La Noue's "sole" negligence. Thus, the clause required Sharabarin to indemnify La Noue for any loss arising out of Sharabarin's work, even if the loss was caused in part by La Noue's negligence.

The trial court ruled that the indemnity clause was void under ORS 30.140, which provides, in part:

"(1)   Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person * * * to indemnify another against liability for damage arising out of * * * damage to property caused in whole or in part by the negligence of the indemnitee is void.

"(2)   This section does not affect any provision in a construction agreement that requires a person * * * to indemnify another against liability for damage arising out of * * * damage to property to the extent that the * * * damage to property arises out of the fault of the indemnitor * * *."

The parties agree that the indemnity clause in the La Noue/Sharabarin subcontract does what ORS 30.140(1) prohibits: it requires Sharabarin to indemnify La Noue for losses caused in part by La Noue. Because the court determined that the indemnity clause is void under ORS 30.140, it granted Sharabarin's motion for summary judgment on the indemnity claim. La Noue asserts, in its third assignment of error, that the court erred because it misinterpreted the statute.

"On review of a summary judgment, we determine whether the moving party is entitled to judgment as a matter of law." *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 237, 855 P2d 626 (1993). Because this is an issue of

statutory interpretation, we apply our usual framework. To interpret ORS 30.140, we examine the text and context of the statute, in light of any useful legislative history offered by the parties. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Context includes other provisions of the statute. *Owens v. Maass*, 323 Or 430, 435-36, 918 P2d 808 (1996). We may not insert what has been omitted, or omit what has been inserted. ORS 174.010. If possible, we must give effect to all of a statute's provisions. *State v. Hernandez*, 186 Or App 86, 90, 61 P3d 951 (2003).

The core issue of statutory construction here is whether, as La Noue contends, ORS 30.140(2) states an exception to subsection (1), or, as contended by Sharabarin, the statute describes two different types of indemnity agreements—those that are void, and those that are enforceable. Under La Noue's reading of the two subsections, an indemnity provision in a construction agreement that offends ORS 30.140(1) and would otherwise be void because it provides for indemnity for damage to property caused in whole or in part by the negligence of the indemnitee, is not void if, as described in subsection (2), it also requires indemnity for damages that arise out of the fault of the indemnitor. La Noue asserts that, although the indemnity clause in this case might otherwise be void under subsection (1), subsection (2) saves it to the extent that the indemnity clause also requires indemnity for damage to property caused by the fault of the indemnitor—Sharabarin. In other words, in La Noue's view, the indemnity clause is enforceable to the extent that the third-party claim alleges negligence by Sharabarin and the indemnity clause requires Sharabarin to indemnify La Noue for Sharabarin's own negligence. The introductory clause of ORS 30.140(1)—"Except to the extent provided under subsection (2)"—would appear to set up subsection (2) as an exception to subsection (1), and, thus, supports La Noue's reading.

In Sharabarin's view, subsection (2) does not save or allow partial enforcement of an indemnity clause that otherwise violates subsection (1) and is void. Rather, Sharabarin contends that the two subsections describe two types of indemnity clauses—one that fails and one that is enforceable: Subsection (1) describes those clauses that are void

because they require indemnity of a person for damages caused in whole or in part by the person's own negligence. Subsection (2) describes those clauses that are enforceable because they provide for indemnity to a person for damages caused by the fault of the indemnitor.

Under Sharabarin's interpretation, an indemnity clause may require a subcontractor to indemnify the general contractor for property damage caused by the subcontractor's negligence. But it cannot require a subcontractor to indemnify the general contractor for claims for property damage caused by the fault of the subcontractor and also by the fault of the general contractor or by the fault of the general contractor and some other third party. In other words, subsection (1) relates to indemnity clauses that allow indemnity claims for damages not caused by the indemnitor and caused either solely or partially by the general contractor, and those are void. Subsection (2) relates to indemnity clauses that allow indemnity claims for damages caused by the indemnitor and not by the general contractor/indemnitee, and those are enforceable.

Sharabarin asserts that an indemnity clause that does what subsection (1) prohibits cannot be saved because it also does what subsection (2) permits: if the clause requires a subcontractor to indemnify a general contractor for the general contractor's negligence, then the clause is void, despite the fact that it also does what subsection (2) permits by permitting indemnity for the indemnitor's own negligence. In Sharabarin's view, this is the only way to construe the two subsections together and consistently with each other.

Further, in Sharabarin's view, the indemnity clause at issue here fails because, although it does what ORS 30.140(2) allows, by requiring Sharabarin to indemnify La Noue for claims caused by the fault of Sharabarin, it also does what ORS 30.140(1) prohibits, by requiring Sharabarin to indemnify La Noue for claims caused in part by the fault of La Noue.

La Noue replies that Sharabarin's interpretation is not the only way to construe the two provisions harmoniously, and that, in fact, the provisions work more harmoniously together if subsection (2) is understood as an exception

to subsection (1): Those portions of an indemnity clause that violate subsection (1) are void and those portions that are consistent with subsection (2) will be enforced. La Noue notes that, in *Hays v. Centennial Floors, Inc.*, 133 Or App 689, 695, 893 P2d 564 (1995), this court previously construed ORS 30.140 and has permitted partial enforcement of an indemnity provision that violates ORS 30.140 *to the extent that* its application requires the subcontractor to indemnify the contractor for the subcontractor's own sole negligence. Similarly, La Noue contends, the indemnity provision here is enforceable to the extent that it requires Sharabarin to indemnify La Noue for Sharabarin's own negligence, even if it also violates ORS 30.140(1) by requiring indemnification of La Noue for La Noue's own negligence.

As Sharabarin correctly points out, *Hays* construed a former version of the statute. Before it was amended by Oregon Laws 1995, chapter 704, section 1, ORS 30.140 provided:

"(1)   Any provision in a construction agreement which requires a person to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused or contributed to by the negligence of the indemnitee in the design or by the sole negligence of the indemnitee in the inspection of the work that is the subject of the construction agreement is enforceable only if the indemnitee secures or maintains insurance covering such risks for the protection of the indemnitor. In no event shall the indemnification obligation under such provisions be greater than the limits of the insurance secured by the indemnitee.

"(2)   Notwithstanding subsection (1) of this section, any provision in a construction agreement which requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused by the sole negligence of the indemnitee is void."

Subsequent to *Hays*, the legislature amended the statute to its current form. We provided a description of those changes in our opinion in *Walsh Construction Co. v. Mutual of Enumclaw*, 189 Or App 400, 407-08, 76 P3d 164 (2003), *aff'd*, 338 Or 1, 104 P3d 1146 (2005) which the Supreme

Court adopted in its own opinion in that case. Specifically, the Supreme Court stated:

"The pertinent portions of the statute underwent a final change in 1995. The legislature deleted the prior subsection (1), altered and renumbered the prior subsection (2) as subsection (1), and added a new subsection (2):

"'(1) [*Notwithstanding subsection (1) of this section,*] **Except to the extent provided under subsection (2) of this section,** any provision in a construction agreement [*which*] **that** requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused **in whole or in part** by the [*sole*] negligence of the indemnitee is void.

"'(2) **This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents[,] representatives or subcontractors.'**

"Or Laws 1995, ch [704], § 1 (new material in boldface; deleted material in italics and brackets).

"Thus, the 1995 amendments essentially inverted the structure of the 1987 version of the statute. Whereas subsection (1) of the 1987 revision of the statute defined a universe of *permissible* indemnification provisions, subject to the 'notwithstanding' exception set out in subsection (2), subsection (1) of the 1995 statute stated a general *prohibition* of indemnification provisions, subject only to the exception described in subsection (2). In addition, the general proscription, now embodied in subsection (1), was expanded to encompass agreements to indemnify for damages arising 'in part' from the indemnitee's negligence. Notwithstanding that inversion and expansion, the statute remained constant in prohibiting agreements by which a party's insurer would be required to indemnify another party for damages arising from the latter party's negligence."

338 Or 1, 8-9, 104 P3d 1146 (2005) (some internal quotation marks omitted; footnote omitted). In *Walsh*, this court

concluded that the disputed contractual provision—which required the subcontractor to purchase additional insurance covering the contractor for the contractor's own negligence—was void under ORS 30.140(1) because it shifted exposure for the contractor's own negligence to the subcontractor. 189 Or App at 410. In the Supreme Court, *amici curiae* asked the court to consider whether, under ORS 30.140(2), the additional insurance provision was void "only to the extent that" it would require a party to indemnify another for the fault of the indemnitee. *Walsh*, 338 Or at 11. The Supreme Court in *Walsh* expressly did not address that question, explaining that there had been no contention that the subcontractor was negligent. *Id.*

The question is presented here, because La Noue contends that Sharabarin's work was defective. Thus, we must decide whether an indemnity clause that includes provisions allowed by ORS 30.140(2) is nonetheless unenforceable because it also includes provisions prohibited by ORS 30.140(1). The question is a close one. As noted earlier, the "[e]xcept to the extent provided under subsection (2)" clause could suggest that an indemnity clause that is void because it violates subsection (1) is not void to the extent that it complies with subsection (2). Or, it could be understood to mean that indemnity clauses that include provisions described in subsection (1) are void, and indemnity clauses including provisions described in subsection (2) are enforceable.

Ultimately, we conclude that La Noue's interpretation of the statute is more persuasive, primarily because Sharabarin's interpretation would render superfluous the clause in subsection (1) that such provisions are void "except to the extent provided in subsection (2)." That language allows an indemnity clause to be enforced to the extent that it allows for indemnity for damage to property caused by the indemnitor, such as the clause in this case. An indemnity clause that offends ORS 30.140(1) because it requires a subcontractor to indemnify a contractor for the contractor's own negligence remains enforceable to the extent that it also requires the subcontractor to indemnify the contractor for the subcontractor's negligence. Because the indemnity clause in the La Noue/Sharabarin contract requires Sharabarin to indemnify La Noue for claims based on its own fault, it is

enforceable to that extent. The trial court therefore erred in granting Sharabarin's motion for summary judgment on the indemnity claim, and we remand on that claim.

## IV.   ATTORNEY FEES

In its sixth assignment of error, La Noue asserts that the trial court erred in concluding that attorney fees were not recoverable as consequential damages and in granting judgment as a matter of law on La Noue's claim for attorney fees and costs. Sharabarin responds that, under ORCP 68, the trial court correctly held that La Noue could not recover attorney fees as part of its consequential damages on the breach of contract claim. We agree with Sharabarin.

La Noue relies on *Huffstutter v. Lind*, 250 Or 295, 301, 442 P2d 227 (1968), to argue that "attorney fees are generally allowable as damages in an action against a defendant where the defendant's tortious or wrongful conduct involved the plaintiff in prior litigation with a third party." But here, there is no prior litigation with a third party— the fees that La Noue seeks to recover are fees it incurred in defending the case at issue. Thus, the recovery of those fees is subject to ORCP 68, which governs the award of attorney fees in all cases except when they are "claimed as damages arising prior to the action" or the fees are granted by order, rather than entered as part of a judgment. ORCP 68 C(1); *see also State v. O'Brien*, 96 Or App 498, 505, 774 P2d 1109 (1989) ("Attorney fees are not considered damages when sought in the same action in which the services are rendered. However, they may be damages when sought in a separate action."). Because the fees do not originate from prior litigation with a third party, the court did not err in denying La Noue's request for attorney fees.[8]

## V.   SUMMARY

The trial court erred in giving a jury instruction on damages based on diminished value when there was

---

[8] La Noue relies on *Hoage v. Westlund*, 43 Or App 435, 441, 602 P2d 1147 (1979), to argue that it can recover, as consequential damages, attorney fees that it incurred on a third-party claim in the same case. As Sharabarin points out, however, *Hoage* predates ORCP 68. Whatever substantive entitlement La Noue might have to those attorney fees, it is not as "damages" in this case.

no evidence in the record to support the instruction. The trial court erred in limiting the damages La Noue could recover to $1,862,666, but the trial court correctly held that the amount of damages La Noue sought could not include any sum received from Zurich for a time period before Sharabarin began work at Montara. The trial court erred in holding the indemnity clause in the parties' contract void. We therefore remand for a new trial on damages only. The trial court's denial of attorney fees is affirmed.

Reversed and remanded on claims for breach of contract and indemnity; otherwise affirmed. Motion for remand denied.

**NAKAMOTO, J.,** concurring.

We hold, contrary to the customary burden of proof, *see North Pacific Lbr. v. Moore*, 275 Or 359, 366, 551 P2d 431 (1976), that third-party defendant Sharabarin—not third-party plaintiff La Noue Development, LLC—had the burden to establish the amount of damages that La Noue could recover under the alternative measure of damages that Sharabarin argued should apply. 259 Or App at 665 n 3. Although I agree that Sharabarin was required to establish the amount of the diminution in value of the buildings, I disagree with the majority's reasoning.

The majority explains the rationale for the holding as follows:

"While *McComb* is not directly on point, it supports the conclusion that, in a breach of contract claim where it is alleged that a party failed to build a building in accordance with the contract, the measure of damages is the difference between the value of the building as constructed and what the value of the building would have been if built according to the contract. 140 Or at 679. In *McComb*, where the parties sought damages based on that measure and failed to establish by competent evidence the amount of those damages, they were not entitled to recover any damages. *Id.* We infer that a party seeking to limit damages based on economic waste has the burden of producing evidence establishing the value of the building as actually built."

*Id.* I write separately to note that (1) *McComb v. Cogswell*, 140 Or 676, 15 P2d 716 (1932), can be read to support our

holding, but not in the way the majority describes, and (2) cases from other jurisdictions support our conclusion that Sharabarin bore the burden to adduce evidence of the diminished value of the Montara buildings.

Initially, I disagree that *McComb* suggests that the correct measure of damages in a case "where it is alleged that a party failed to build a building in accordance with the contract," 259 Or App at 665 n 3, is diminished value rather than cost of repairs. The normal measure of damages in such a case is cost of replacement or repair. In *Beik v. American Plaza Co.*, 280 Or 547, 555, 572 P2d 305 (1977), the Supreme Court stated the "rule in Oregon" as follows: "the cost of replacement or repair is the correct measure of damage for defects in work unless that remedy generates undue economic waste."

In addition, the majority suggests that *McComb* is a "failure of proof" case on the part of a proponent of "diminished value" damages. But the defendant homeowners in *McComb*, who had filed a counterclaim and sought damages for breach of the construction contract, had not contended that the proper measure of damages was diminished value. Rather, they attempted to establish the normal measure of damages due to the plaintiff contractor's departures from the plans and specifications in their contract through testimony from an expert as "to what it would cost to replace or reconstruct according to contract." 140 Or at 679. The Supreme Court, however, noted that "[u]nder the pleadings and facts," the proper measure of damages was diminished value and not "what it would cost to tear out and replace or rebuild according to the plans and specifications." *Id.* The court concluded that the homeowners had "failed to establish, by competent evidence, the amount of their damages" and affirmed the trial court's denial of relief. *Id.*

Nevertheless, *McComb* may still lend support to the conclusion that Sharabarin had to adduce evidence of the amount of the diminished value of the buildings at trial. That is because of the Supreme Court's emphasis on the pleadings and facts. *McComb* may suggest that notice to a party that an alternative measure of damages could apply is important. Here, Sharabarin did not plead that the economic

waste doctrine applied, and his own proposed jury instruction would have allowed La Noue to obtain typical damages for a breach of contract, that is, expectation damages.

La Noue also relies on cases from other jurisdictions, such as *Panorama Village Homeowners v. Golden Rule*, 102 Wash App 422, 428, 10 P3d 417, 422 (2000), *rev den*, 142 Wash 2d 1018, 16 P3d 1266 (2001), and *Andrulis v. Levin Constr. Corp.*, 331 Md 354, 376, 628 A2d 197, 208 (1993), for the proposition that, once it established the cost to remedy the defects that Sharabarin caused, Sharabarin was required to come forward with evidence of the diminished market value of the buildings. La Noue's position appears to be the majority view. *See also Shell v. Schmidt*, 164 Cal App 2d 350, 366, 330 P2d 817, 827 (1958), *cert den*, 359 US 959 (1959); *P. G. Lake, Inc. v. Sheffield*, 438 SW2d 952, 956 (Tex Ct Civ App 1969); *Stangl v. Todd*, 554 P2d 1316, 1320 (Utah 1976). Although the contours of the economic waste doctrine in Oregon are not as specifically defined as in cases from other jurisdictions, such as *Andrulis*, given the present circumstances, where Sharabarin did not make it evident that he was going to rely on the economic waste doctrine at trial, I concur that Sharabarin bore the burden to produce evidence of the diminution in the value of the buildings before the jury was instructed on his theory of damages. As the majority opinion explains, that proof was lacking, and so giving the damages instruction was error.