No. 22 June 18, 2015 333

IN THE SUPREME COURT OF THE
STATE OF OREGON

MONTARA OWNERS ASSOCIATION,
an Oregon non-profit corporation,
*Plaintiff,*

*v.*

LA NOUE DEVELOPMENT, LLC,
an Oregon limited liability company; et al.,
*Defendants.*

LA NOUE DEVELOPMENT, LLC,
an Oregon limited liability company,
*Third-Party Plaintiff-Appellant,*
*Respondent on Review,*

*and*

Mark LA NOUE,
an individual,
*Third-Party Plaintiff,*

*v.*

SUTTLES CONSTRUCTION, INC.,
an Oregon corporation;
Gordon Harding, an individual,
dba Gordon Harding Construction;
MCM Architects, PC,
an Oregon professional corporation; et al.,
*Third-Party Defendants,*

*and*

Vasily A. SHARABARIN,
an individual, dba Advanced Construction,
*Third-Party Defendant-Respondent,*
*Petitioner on Review.*

EVANS CONSTRUCTION SIDING CORPORATION,
an Oregon corporation,
*Fourth-Party Plaintiff,*

*v.*

DAVE BURGESS CONSTRUCTION, INC.,
an Oregon corporation; et al,
*Fourth-Party Defendants.*

DAVE BURGESS CONSTRUCTION, INC.,
an Oregon corporation,
*Fifth-Party Plaintiff,*

*v.*

Raul HERNANDEZ
and Carlos Hernandez, individuals,
dba Hernandez Brothers, a partnership; et al,
*Fifth-Party Defendants.*

LA NOUE DEVELOPMENT, LLC,
an Oregon limited liability company;
and Mark La Noue, an individual,
*Plaintiffs,*

*v.*

MCM ARCHITECTS, PC,
an Oregon professional corporation,
*Defendant.*

(CC051213487, CC061213628;
CA A140771; SC S062120)

En Banc

On review from the Court of Appeals.*

Argued and submitted on November 6, 2014.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the briefs for petitioner Vasily A. Sharabarin. With him on the brief was Julie A. Smith.

Leta E. Gorman, Jordan Ramis PC, Lake Oswego, argued the cause and filed the brief for respondent La Noue Development, LLC.

_____

\* Appeal from Multnomah County Circuit Court, Hon. Jean K. Maurer, Judge. 259 Or App 657, 317 P3d 257 (2013).

BALMER, C. J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**BALMER, C. J.**

This construction defect case presents three issues on review, following certain rulings by the trial court and an award of damages by the jury. First, we consider the proper application of ORS 30.140, a statute that voids overbroad indemnity provisions in construction contracts. The Court of Appeals held that the trial court had erred by invalidating an indemnity provision in its entirety when the provision was only partially void under ORS 30.140. *Montara Owners Assn. v. La Noue Development, LLC*, 259 Or App 657, 682-83, 317 P3d 257 (2013). On that issue, we affirm the Court of Appeals and remand to the trial court. Second, we consider whether it was error for the trial court to give an instruction on the economic waste doctrine in the absence of any evidence on the alternative measure of damages, diminution in value. The Court of Appeals found that it was error to give the instruction and that the error was not harmless. *Id.* at 669-70. As to that issue, we reverse the Court of Appeals, because we conclude that the instructional error was harmless. Third, we consider whether a third-party plaintiff can recover attorney fees as consequential damages for a third-party defendant's breach of contract when the attorney fees were incurred in the first-party litigation in the same action. The Court of Appeals affirmed the trial court's ruling that the general contractor in this case could not recover such attorney fees. *Id.* at 683. On the issue of the proper procedure to recover those fees, we agree with the Court of Appeals and the trial court. However, we reverse and remand to the trial court to consider the general contractor's substantive right to those fees.

The Montara Owners Association (homeowners) sued the developer and general contractor, La Noue Development, LLC (La Noue), for damages caused by design and construction defects in the building of the Montara townhomes, a complex of 35 separately owned units in multiple buildings. The defects included problems with the framing, siding, decking, and windows, resulting in water intrusion and water damage. La Noue, in turn, filed a third-party complaint against multiple subcontractors, including Vasily A. Sharabarin, dba Advanced Construction (Sharabarin),

who provided siding work on four buildings. Before trial, however, La Noue settled with the homeowners for $5 million—eliminating the first-party litigation from the case—and also reached settlements with most of the third-party subcontractors. La Noue did not settle with Sharabarin.

Because of various pretrial rulings, the only claims submitted to the jury were La Noue's breach of contract claims against Sharabarin and two other subcontractors.[1] Before trial, the trial court granted summary judgment in favor of Sharabarin on La Noue's claim for contractual indemnity, on the ground that the indemnification provision on which La Noue had relied was void under ORS 30.140. The trial court also held that the court—not the jury—would decide whether La Noue could recover the attorney fees that it had incurred in defending against the homeowners' claims as consequential damages for Sharabarin's breach of contract and that the court would resolve that issue after trial. In its post-trial ruling on the attorney fee issue, the court ultimately held that La Noue could not recover attorney fees as consequential damages in the case, even after trial, and denied La Noue's claim for those attorney fees.

La Noue tried its breach of contract claim to the jury. La Noue generally contended that Sharabarin's work in siding the townhouses had deviated from the plans and specifications in the contract and had damaged the buildings that Sharabarin had worked on. Through an expert witness, La Noue presented evidence that it would cost just under $2 million to repair the damage caused by Sharabarin's breach. In contrast, Sharabarin's expert witness testified that the cost to repair all of the damage caused by various subcontractors to the four buildings Sharabarin worked on would be only around $1 million. He further stated that only five percent of that $1 million repair cost involved areas where Sharabarin had performed work, and concluded that the resulting amount (about $50,000) represented the cost of repairing any damages caused by Sharabarin's breach.

---

[1] The other subcontractors settled with La Noue while the case was pending before the Court of Appeals, leaving Sharabarin as the only subcontractor remaining on appeal. Because of those settlements, we limit our discussion of the facts to Sharabarin's participation at trial.

The jury found that Sharabarin had breached his contract with La Noue and awarded $43,711 in total damages, significantly less than La Noue had sought. La Noue appealed. The Court of Appeals reversed the summary judgment in favor of Sharabarin on the contractual indemnity claim, held that the trial court erred in giving one of Sharabarin's requested jury instructions and that the error was prejudicial, and affirmed the trial court's denial of La Noue's claim for attorney fees. *Montara*, 259 Or App at 670. Sharabarin petitioned this court for review of the Court of Appeals' rulings on the jury instruction and contractual indemnity issues. La Noue opposed review but requested contingent review of the Court of Appeals' ruling on attorney fees and another aspect of the Court of Appeals' ruling on the jury instruction issue.

## I.    INDEMNITY UNDER ORS 30.140

We first address whether the trial court erred in granting summary judgment on the issue of contractual indemnification. "In reviewing a trial court's disposition of a motion for summary judgment, this court determines whether the moving party is entitled to judgment as a matter of law." *PIH Beaverton, LLC v. Super One, Inc.*, 355 Or 267, 275, 323 P3d 961 (2014) (citing ORCP 47 C). The indemnity provision in the contract between La Noue and Sharabarin provided:

> "[Sharabarin] specifically and expressly agrees to indemnify and save harmless [La Noue], its officers, agents and employees, from and against any and all suits, claims, actions, losses, costs, penalties and damages, of whatsoever kind or nature, including attorneys' fees, arising out of, in connection with, or incident to [Sharabarin's] performance of th[e] subcontract, whether or not caused in part by [La Noue], [its] employees or agents, but excepting that caused by the sole negligence of [La Noue], [its] employees or agents."

(Capitalization omitted.) In a pretrial ruling, the trial court granted Sharabarin's motion for summary judgment on the issue of contractual indemnity because "this case falls squarely within ORS 30.140 and its interpretation in *Walsh* [*Const. Co. v. Mut. of Enumclaw*, 338 Or 1, 104 P3d 1146

(2005),]" and therefore, the court concluded, the indemnity clause was void.

ORS 30.140 provides:

"(1)   Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

"(2)   This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors."

Because the contract at issue here provided for indemnification "whether or not caused in part by [La Noue] [and only] excepting that caused by the *sole* negligence of [La Noue]," the parties agree that it violates the prohibition on requiring indemnification "for damage * * * caused in *whole or in part* by the negligence of the indemnitee." ORS 30.140(1) (emphases added). The issue here is the effect of the exception in ORS 30.140(2) on that prohibition. As noted, the Court of Appeals agreed with La Noue that ORS 30.140(2) sets out an exception to ORS 30.140(1) and that the indemnification provision here comes within that exception. *Montara,* 259 Or App at 682-83. For that reason, it reversed the trial court.

On review, Sharabarin argues that ORS 30.140 sets forth two mutually exclusive categories of construction agreement indemnification provisions, one of which is enforceable and the other of which is void. Under his view, if an indemnification provision requires one person (the indemnitor, usually a subcontractor) to indemnify another (the indemnitee, usually a general contractor)[2] for damages

---

[2] Although ORS 30.140 uses the terms "indemnitee" and "indemnitor," we refer to the general contractor and the subcontractor, respectively, in this opinion where doing so lends clarity to our reasoning.

that arise in whole or in part out of the negligence of the general contractor, the provision is void in its entirety under subsection (1); in contrast, if an indemnification provision requires the subcontractor to indemnify the general contractor for only damages that arise out of the fault of the subcontractor, the provision is enforceable under subsection (2). Sharabarin argues that because the contract provision at issue here requires indemnity to a greater extent than allowed under subsection (2), it falls under subsection (1) and is void in its entirety. La Noue concedes that the provision in the subcontract with Sharabarin partially does what subsection (1) prohibits, but argues that the provision remains enforceable to the extent allowed by subsection (2), because the legislature intended subsection (2) as an exception to subsection (1) and intended such provisions to be partially enforceable. For the reasons set out below, we agree with La Noue that the provision is partially enforceable.

This issue presents a question of statutory interpretation to be analyzed using the framework described in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We begin by examining the statute's text and context and then look to legislative history if helpful to determine the legislature's intent. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012). Where parts of a statute conflict, we attempt to harmonize them in a way that gives effect to both. *Weldon v. Bd. of Lic. Pro. Counselors & Therapists*, 353 Or 85, 91-92, 293 P3d 1023 (2012) (citing *State v. Guzek*, 322 Or 245, 266-68, 906 P2d 272 (1995)).

ORS 30.140(1) declares that an indemnity provision of the kind that it describes is void "*[e]xcept to the extent* provided under subsection (2)." (Emphasis added). That phrase lends support to La Noue's interpretation—that subsection (2) was intended to carve out an area of indemnification from the general rule voiding indemnification clauses in subsection (1). By including the phrase "[e]xcept to the extent provided under subsection (2)" in subsection (1), the legislature intended that the subsections would overlap rather than be mutually exclusive, as Sharabarin contends. Sharabarin's interpretation, on the other hand, would make that phrase superfluous. "Except" in that context means

"with the exclusion or exception of" or "other than : BUT." *Webster's Third New Int'l Dictionary* 791 (unabridged ed 2002). "Extent" means "the range (as of inclusiveness or application) over which something extends : SCOPE *** <the ~ of his authority> <the ~ of the law>" and "the limit to which something extends <exerting the full ~ of his power>." *Webster's* at 805. Thus, ORS 30.140(1) makes certain construction contract provisions void—provisions that require indemnification for damage "caused in whole or in part by the negligence of the indemnitee" general contractors—but excludes from being voided the part of the indemnification agreement that comes within subsection (2)—that is, where the liability "arises out of the fault of the indemnitor" subcontractor. Subsection (2) confirms the legislative intent that the statute "not affect" indemnification for damage which is "the fault of the indemnitor" subcontractor.

In arguing for a contrary understanding of the statute, Sharabarin urges this court to give weight to the legislature's choice of the words "any provision" in subsection (1). Sharabarin argues that the legislature intended the part of the provision that is unenforceable under subsection (1) to void the entire indemnification provision—including the part that otherwise would be enforceable under subsection (2)—and that that legislative intent is evidenced by the language in subsection (1) making void "any provision" requiring what it forbids. We disagree, however, that the statutory phrase "any provision" can be read so broadly. It is true that the contract language at issue in this case is a "provision" requiring, in part, what subsection (1) forbids. However, it does not follow that the entire provision—including the part permitted by subsection (2)—is void.

The context for interpreting a statute's text includes the preexisting common law, and we presume that the legislature was aware of that existing law. *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 691, 318 P3d 735 (2014). Under Oregon law, both today and at the time the legislature enacted ORS 30.140, when an "agreement is partly legal and partly illegal, if the legal may be separated from the illegal, the legal part will be enforced." *Eldridge v. Johnston*, 195 Or 379, 405, 245 P2d 239 (1952); *see also State*

*v. McDonnell*, 310 Or 98, 116, 794 P2d 780 (1990) (Fadeley, J., concurring in part and dissenting in part) (collecting cases supporting the proposition that "Oregon disregards the illegality and enforces the contract").

In *Eldridge*, the defendant agreed as part of the sale of his interest in the plaintiff's meat business to not engage in the meat business in "the entire states of Oregon and Washington" for 10 years. 195 Or at 400. This court—after assuming that the two-state exclusion was so broad as to be void because of the public policy against restraints on trade—held that a "reasonable territorial area" in Oregon where the plaintiff actually conducted business could be severed from the two-state area and enforced against the defendant. *Id.* at 409-10. In this case, as in *Eldridge*, the legal and illegal parts of the provision are intermingled. However, the illegal indemnification in this contract can be severed, and would be under *Eldridge*, allowing indemnification to the extent permitted by ORS 30.140(2). *See Hays v. Centennial Floors, Inc.*, 133 Or App 689, 695, 893 P2d 564 (1995) (holding that "[*former*] ORS 30.140(2) voids the clause *to the extent* that its application would require [the subcontractor] to indemnify [the general contractor] for its own sole negligence" (emphasis added)); *accord Richardson v. Howard S. Wright Const. Co.*, No CV-05-1419-ST, 2007 WL 1467411 at *5 (D Or, May 18, 2007) (unpublished) (citing *Hays* for proposition that, if contract is broad enough to violate ORS 30.140(1), "it is only unenforceable in part"). We do not believe that, in adopting ORS 30.140, the legislature intended to create a different system where any imperfection in a contract provision would void the entire provision. Rather, we interpret ORS 30.140 to be consistent with *Eldridge* and Oregon case law providing for severance of the illegal part of a contract provision and enforcement of the remainder.

The legislative hearings on Senate Bill (SB) 788—the 1995 revision to ORS 30.140 in which the first and second subsections took their present form—further reveal that the legislature intended to address an issue of perceived unfairness in the construction business. *See Walsh Construction Co. v. Mutual of Enumclaw*, 338 Or 1, 7-9, 104 P3d 1146 (2005) (examining in detail the "evolution of ORS 30.140");

*Gaines*, 346 Or at 172 (court may consult legislative history to confirm interpretation even where there does not appear to be an ambiguity in the statute's text). The prior version of the statute "spoke very clearly to [the situation of] sole negligence [of the general contractor], but it le[ft] quiet the question of concurrent negligence." Tape Recording, Senate Judiciary Committee, SB 788, Apr 3, 1995, Tape 83, Side A (statement of Steve Frey). Because of that ambiguity in the law, general contractors had developed a practice of requiring subcontractors to indemnify them on a take-it-or-leave-it basis for everything except the sole negligence of the general contractor, essentially "shov[ing] the insurance liability down the line to the guy on the bottom, and if he wants the contract he must" accept the provision. Tape Recording, House Commerce Committee, SB 788, May 4, 1995, Tape 33, Side A (statement of Rep Larry Wells).

Little was said in the public hearings and work sessions on SB 788 about particular contract wording or provisions. Rather, the legislature appears to have been more concerned about the practical outcome of the contract provisions: essentially, that the "[sub]contractor [should] be responsible for the [sub]contractor's actions, and the [general contractor should] be responsible for the [general contractor's actions]." Tape Recording, House Commerce Subcommittee on Business, SB 788, May 2, 1995, Tape 75, Side A (statement of Ruth Spetter). One subcontractor characterized the bill as "essentially *** propos[ing] to" "edit out" language in subcontracts requiring that a subcontractor indemnify a general contractor for the general contractor's own negligence. Tape Recording, Senate Judiciary Committee, SB 788, Apr 3, 1995, Tape 83, Side A (statement of Frank Morse). From that legislative history, we understand that, when the legislature used the phrase "to the extent" in ORS 30.140(1), it intended to refer to the extent of fault described by subsection (2). That is, the legislature intended that a subcontractor remain liable for the subcontractor's negligence even as subsection (1) protects the subcontractor from having to indemnity a general contractor for the general contractor's negligence.

Given the analysis above, we conclude that the trial court should have severed the unenforceable parts of the

indemnity clause—the parts that violate ORS 30.140(1)—but still allowed La Noue's claim to go forward to determine if, and to what extent, the "damage to property ar[ose] out of the fault of [Sharabarin], or the fault of [Sharabarin's] agents, representatives, or subcontractors" under ORS 30.140(2). We agree with the Court of Appeals that the trial court erred in granting Sharabarin's motion for summary judgment on La Noue's indemnity claim under ORS 30.140, and we remand that claim to the trial court for further proceedings on that claim.[3]

## II.   JURY INSTRUCTIONS

We turn to La Noue's argument that it was reversible error for the trial court to instruct the jury on the economic waste doctrine as part of the instruction on damages for the breach of contract claim. The trial court described the economic waste doctrine for the jury in Instruction No. 26, which dealt with the appropriate measures of damages:

> "If one party breached the contract, then you must decide if the breach caused a loss and, if so, how much money should be paid.
>
> "The mere fact that I am talking about money does not mean that you should or should not award any money.
>
> "The cost of replacement or repair so as to make the building conform to the plan is the correct measure of damages for defects in construction work unless that remedy generates undue economic waste. If you find that, except for technical, nonsubstantial, or immaterial departures by the defendants from the plans and specifications, the framing or siding work is satisfactory, and that an award to La Noue Development, L.L.C. for claimed repair costs would result in gross economic waste, the proper measure of damages is not the cost of repair but rather the difference in the value of Montara as built and what its value would be if it had been built according to the subcontracts."

---

[3] We do not address any potential overlap between La Noue's different claims or the damages that it may recover under those claims. It may be that the indemnification provision, as constrained by ORS 30.140, does not provide for La Noue to recover anything more than they have already been awarded by the jury for Sharabarin's breach of contract plus any attorney fees potentially recoverable for the reasons set out later in this opinion.

That instruction identified the "cost of replacement or repair" as the "correct" measure of damages, but it also told the jury that there was an alternative measure of damages—the difference between the value of the project as built and its value if it were built according to the contract—that the jury could award if the repair cost resulted in "gross economic waste."

The verdict form asked the jury to determine whether Sharabarin had breached his contract with La Noue, and, if so, what damages the breach had caused La Noue. As noted, the jury found that Sharabarin had breached his contract and awarded $43,711 in total damages, significantly less than the $2 million that La Noue had sought. On appeal, La Noue argued that, in giving Instruction No. 26, the trial court had erred by instructing the jury that— if it found economic waste—it could award damages based on the diminution in value of the project, rather than the cost of repair. La Noue asserts that the $43,711 represented the amount that the jury believed was the diminution in value caused by Sharabarin's breach, but that there was no evidence in the record of diminution in value. Sharabarin, on the other hand, claims that the $43,711 represented the cost of repair, and that evidence in the record supported that amount. As noted previously, Sharabarin's expert testified that Sharabarin's breach of contract, if proved, caused approximately five percent of the $1 million in total cost to repair the buildings that Sharabarin had worked on.

Where, as in this case, a party alleges error in the jury instructions given by the trial court, this court asks three questions: whether the objection was preserved; whether the instruction was erroneous; and, if it was erroneous, whether the instruction substantially affected the party's rights under ORS 19.415(2). *Wallach v. Allstate Ins. Co.*, 344 Or 314, 319-22, 180 P3d 19 (2008). The Court of Appeals concluded that La Noue adequately preserved its objection to the jury instruction, *Montara*, 259 Or App at 664-65 n 2, and we agree. We therefore examine the doctrine of economic waste to determine if Instruction No. 26 included an erroneous statement of that doctrine, either because the instruction misstated Oregon law or because the evidence was insufficient to support giving the instruction.

A.  *The Economic Waste Doctrine in Oregon*

When a "contractor fails to keep [an] agreement," the measure of damages "is always the sum which will put [the injured party] in as good a position as if the contract had been performed." Samuel Williston, 24 *Williston on Contracts* § 66.17, 461 (Richard A. Lord ed., 4th ed 2002). In Oregon construction defect cases, that "sum" is the "amount of money equal to the cost of curing the defects, provided repair is the prudent remedy to apply." *Turner v. Jackson*, 139 Or 539, 560, 11 P2d 1048 (1932). That is the injured plaintiff usually "recovers such amount as he has reasonably expended, or will reasonably have to spend, to remedy the defect." *Schmauch v. Johnston*, 274 Or 441, 446-47, 547 P2d 119 (1976) (quoting Charles T. McCormick, *Damages* § 168, 648 (1935)). That "cost of repair" calculation is ordinarily the measure of damages in a construction defect case, as the instruction at issue here stated.

However, Oregon courts use an alternative measure of damages—the diminution in the market value of the property—when the cost of repair is not "the prudent remedy to apply" because that remedy would create "economic waste." *See Turner*, 139 Or at 560. In the case of economic waste, "damages will be measured not by the cost of remedying the defect, but by the difference between the value of the building as it is and what it would have been worth if it had been built in conformity with the contract"—in other words, the diminution in value.[4] *Schmauch*, 274 Or at 447.

Economic waste occurs where "the defect in material or construction is one that cannot be remedied without an expenditure for reconstruction disproportionate to the end to be attained, or without endangering unduly other parts of the building." *Id.*; *see also Restatement (Second) of Contracts* § 348(2)(b) (1979) (courts award "the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to" the injured party). Stated differently, "[d]iminution in value is the proper measure of damages only

---

[4] For clarity, we refer to that measure throughout this opinion as the "diminution in value," although we note that it is the same amount that the market value of the building would be expected to increase if the repair were completed.

when the cost of repair is *disproportionate* to the diminution in value." *Hanset v. General Construction Company*, 285 Or 101, 106, 589 P2d 1117 (1979) (emphasis in original).[5] In *Jacob & Youngs v. Kent*, 230 NY 239, 129 NE 889 (1921), a classic case on economic waste, the defendant contracted to build a home for the plaintiff according to a contract requiring the use of "Reading" brand pipe. After the house was complete, the plaintiff discovered that the defendant had instead used "Cohoes" pipe, an equally good brand. *Id.* at 241, 129 NE at 890. To replace the Cohoes pipe with Reading pipe would have required tearing down walls at great expense. *Id.* The substitution of Cohoes pipe for Reading pipe did not affect the market price of the house, and therefore the proposed repair would not have increased the market price of the house. Judge Cardozo declared that the cost of repair was "grossly and unfairly out of proportion to the good to be attained," namely "the difference in value, which [in that case] would be either nominal or nothing." *Id.* at 244, 129 NE at 891. Where the diminution in value was near zero, and the cost of repair was a "great expense," the court awarded only nominal damages. *Id.* The *Jacob & Youngs* decision accords with Oregon law.

B.   *The Trial Court Erred in Giving Instruction No. 26.*

     "In determining whether it was error to give a particular jury instruction, this court reviews the instructions as a whole to determine whether they accurately state the law." *State v. Serrano*, 355 Or 172, 187, 324 P3d 1274 (2014). A trial court errs if it gives a jury instruction that is "at odds with [a] general rule" of Oregon law or "inconsistent with [a] specific application of that rule" in prior Oregon case

---

[5] In *Beik v. American Plaza Co.*, 280 Or 547, 555-56, 572 P2d 305 (1977), this court suggested that the disproportionality test for economic waste in Oregon is not necessarily limited to a comparison of cost of repair and diminution in value, and may involve consideration of other factors, such as purchase price, need for structural change, loss of habitability, and savings to the breaching party. *See also Hanset*, 285 Or at 106-07 (considering plaintiffs' intentions to live in, rather than sell, their home in determining appropriate measure of damages). Although this court has referred to those other factors, the parties have not asked us to resolve, and it is not necessary to resolve here, any uncertainty as to the proper formulation of the economic waste doctrine, because all of the variations involve some consideration of diminution in value. It is sufficient for the purposes of this case to consider the test for economic waste that compares cost of repair to diminution in value.

law. *Wallach*, 344 Or at 319-20; *see also Hernandez v. Barbo Machinery Co.*, 327 Or 99, 107, 957 P2d 147 (1998) ("[W]e first inquire whether the requested jury instruction is a correct statement of the law."). An instruction can also be erroneous because there is no evidence in the record to support giving the instruction. That is because giving instructions not supported by the evidence permits the jury to speculate in rendering its verdict, rather than to base the verdict on the evidence and the applicable law. *Dormaier v. Jesse et al*, 230 Or 194, 198, 369 P2d 131 (1962); *see also Purdy v. Deere & Co.*, 355 Or 204, 227, 324 P3d 455 (2014) ("[T]he parties in a civil action are entitled to jury instructions on their theory of the case if their requested instructions correctly state the law, are based on the current pleadings in the case, *and are supported by evidence.*" (Emphasis added.)); *Sherrard v. Werline*, 162 Or 135, 157, 91 P2d 344 (1939) ("The purpose of instructions is to state to the jury the principles of law governing the facts revealed to the jury by the evidence.").

Neither party argues that Instruction No. 26 was erroneously given because it was incorrect as an abstract statement of law.[6] As discussed above, the instruction described the default measure of damages—cost of replacement or repair—and the circumstances in which an alternative measure of damages, diminution in value, would be appropriate, *viz.*, when an award of the cost of repair would constitute "economic waste."

La Noue, however, argues that it was error for the trial court to give the instruction because the economic waste doctrine does not apply to this type of case, where La Noue is not a homeowner suing a building contractor but rather a general contractor suing a subcontractor.

Contrary to La Noue's assertion, there is no requirement that the party injured by defective work be a homeowner. *See Turner*, 139 Or at 560 (referring to "the injured

---

[6] Because neither party raised the issue, we do not consider whether Instruction No. 26 was erroneous for failing to define the term "economic waste" or for failing to refer in any respect to the cost of repair as being "disproportionate." *See Schmauch*, 274 Or at 446; *see also State v. McDonnell*, 313 Or 478, 497, 837 P2d 941 (1992) (although "words of common usage need not be defined for the jury," terms that are not of common usage and are not "understandable without elaboration" should be defined).

party"); Williston, *Williston on Contracts* § 66:17 at 476 ("[T]he principles [of the economic waste doctrine] are generally applicable to all kinds of contracts for a particular piece of work, such as, for example, where a charter party is broken by the failure of the charterer to load the vessel." (Footnotes omitted.)). One of the leading cases on economic waste arose from the breach of a lease contract requiring a lessee to re-grade a family farm at the conclusion of a mining lease term. *Peevyhouse v. Garland Coal & Min. Co.*, 1962 Okla 267, ¶ 14, 382 P2d 109, 114 (1962) (where the cost of re-grading was $29,000 and the market value was diminished only $300, court measured property owners' lost expectancy by the lesser amount). La Noue cites no authority that limits the application of Oregon's economic waste doctrine to cases where one party is a homeowner or landowner, and we see no principled reason to adopt that limitation.

La Noue argues in the alternative that, even if the economic waste doctrine applies to this type of case, Sharabarin failed to meet his "burden of proof" to show economic waste. Sharabarin presents two arguments in response: First, the burden to show economic waste was not his and, alternatively, to the extent that he did have the burden of proof on economic waste, he met that burden. Second, Sharabarin argues that once he made some showing of economic waste, the subsequent burden to prove damages— the amount of the diminution in value—shifted back to the party seeking damages (in this case, La Noue) because that party always has the burden of proof on damages. *See North Pacific Lbr. v. Moore*, 275 Or 359, 366, 551 P2d 431 (1976) (plaintiff has burden to "establish the fact of damage and evidence from which a satisfactory conclusion as to the amount of damage can be reached").

The parties' arguments over who bears the "burden of proof" on economic waste, however, do not address the relevant issue regarding the jury instruction in this case. Rather, the legal issue on review is whether there was "some evidence" in the record from which the jury could have reached a verdict that was consistent with the instruction. *See State v. Brown*, 306 Or 599, 602, 761 P2d 1300 (1988) ("In civil cases, the jury must be permitted to consider every claim on which the plaintiff has presented *some* evidence

tending to establish each element of that claim." (Emphasis in original.)); *Wooten v. Dillard*, 286 Or 129, 136, 592 P2d 1021 (1979) ("We conclude that we are unconcerned with the quantum of evidence. Our concern is only with the existence of evidence which, if accepted as being true by the trier of fact, would establish [the fact in question]."); *Plourd v. Southern Pac. Transp. Co.*, 266 Or 666, 670-71, 513 P2d 1140 (1973) (because there was "some evidence" in the record relating to an issue, plaintiff was entitled to jury instruction on that issue). Regardless of which party ultimately bore the burden of production or proof on economic waste, if there was no evidence in the record to support that part of the instruction, the instruction was erroneous.

As discussed above, the proper determination of whether economic waste would result from an award of cost of repair damages requires a comparison of the cost of repair and the diminution in value. Thus, it was error to give the part of the instruction that dealt with economic waste unless there was some evidence in the record of *both* measures of damage. Here, there was no evidence in the record regarding diminution in value. Sharabarin points only to evidence that some (but not all) of his breaches of contract were merely "technical" deviations from the plans and to evidence of the cost to build the townhouses. Neither party put on evidence of the value of the townhouses or of any reduction in value as a result of Sharabarin's breach of contract. And neither party sought to tie that breach to any particular reduction in value or in market price. At least some evidence of diminution in value was required to support an instruction that would have allowed the jury to base its verdict on that theory. Because there was no such evidence, the trial court erred in giving that part of the instruction.

C.  *The Erroneous Instruction Did Not Substantially Affect La Noue's Rights.*

When an appellate court concludes that a jury instruction was erroneously given, the next question is "whether the erroneous instruction substantially affected [the party's] rights" under ORS 19.415(2).[7] *Wallach*, 344

[7] ORS 19.415(2) provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party." *See also* Or Const,

Or at 322. In applying that standard, an appellate court must "assess[] the extent to which an error skewed the odds against a legally correct result" and determine "whether—in an important or essential manner—the error had a detrimental influence on a party's rights." *Purdy*, 355 Or at 226. Generally, "little likelihood is not enough, but more—that is 'some' or a 'significant' likelihood that the error influenced the result—will suffice for reversal." *Id.*; *see also id.* at 235 (Balmer, C. J., concurring) ("[T]he bar for the appellant is somewhere above 'possibly affected' the result, but below 'necessarily affected' the result," and how much likelihood is required "will depend on factual and legal issues in the case as determined from the trial court record.").

As noted, it was error for the trial court to give Instruction No. 26 because that instruction referred to both the usual measure of damages, as to which evidence had been introduced by both parties, and to an alternative measure of damages, as to which there was no evidence in the record. ORS 19.415(2) places the burden to demonstrate prejudicial effect on whichever party loses in the trial court and then seeks reversal or modification of the judgment on appeal. *Purdy*, 355 Or at 225; *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 173-74, 61 P3d 928 (2003).

Here, La Noue has not met its burden of showing that the instructional error substantially affected its rights. Sharabarin's expert testified that the entire cost of repair for the buildings Sharabarin worked on would be $1 million, with only five percent of that amount attributable to Sharabarin. La Noue's expert testified that the cost of repair of the work done improperly by Sharabarin was slightly less than $2 million. If the jury believed Sharabarin's expert over La Noue's expert, it would have attributed $50,000 in damages to Sharabarin—five percent of the $1 million total. The jury awarded La Noue $43,711 in damages for breach of contract.

We presume, as we ordinarily do, that the jury followed the instructions. *Wallach*, 344 Or at 326. Here,

---

Art VII (Amended), § 3 (This court should affirm when "the judgment of the court appealed from was such as should have been rendered in the case *** notwithstanding any error committed during the trial[.]").

those included instructions that the jury base any award of damages "on the evidence" and that the jury not decide the case based on "guesswork, conjecture, or speculation." The instructions also told the jury that damages could be awarded in the amount of the cost of repair or, in certain circumstances, in the amount of diminution in value. Both parties introduced evidence on cost of repair, and the jury awarded an amount of damages ($43,711) that was close to the cost of repair as estimated by Sharabarin's expert ($50,000). On the other hand, there was no evidence as to diminution in value. In these circumstances, we presume that the jury based its award on the cost of repair evidence. Assuming the jury followed the instructions, that was the only theory on which it could have based the verdict, because no evidence supported a verdict based on the alternative theory of diminution in value. *See Shoup*, 335 Or at 178-79 (harmless error because defendant had "not identified anything in the record to demonstrate that the jury based its verdict on" the error); *Jensen v. Medley*, 336 Or 222, 240, 82 P3d 149 (2003) (where alternative basis could support jury's verdict, court asks "whether the record contains sufficient evidence to support liability on that alternative basis"). La Noue points to nothing in the record to suggest that the reference in the damage instruction to diminution in value as an alternative measure was likely to have had any effect on the jury's deliberations.

The Court of Appeals concluded that the instructional error was not harmless because "the jury instruction permitted the jury to speculate as to the loss in value of the buildings as a consequence of Sharabarin's breach of the contract." *Montara*, 259 Or App at 670. We disagree. The assessment of harmless error under ORS 19.415(2) necessarily involves a contextual, record-based review that takes into account what evidence the jury had before it. An Oregon appellate court "must adhere to the limitation of ORS 19.415(2) and reverse or modify a judgment only if it can [determine] *from the record* that the error 'substantially affect[ed] the rights of a party.'" *Shoup*, 335 Or at 174 (emphasis added); *see also Purdy*, 355 Or at 236 (Balmer, C. J., concurring) ("[W]e do not look at trial court errors in the abstract—rather, we examine those errors in the context

of the trial record as a whole, including \*\*\* the evidence admitted and excluded[.]").

The Court of Appeals concluded that the jury "speculate[d] as to the loss in value." *Montara*, 259 Or App at 670. La Noue's arguments do not persuade us, and we reach a different conclusion. As discussed, not only was there no evidence of "loss in value," there was evidence—from both parties—of cost of repair. The jurors were cautioned not to speculate, and nothing in the record suggests that they did. On this issue, the jury apparently credited Sharabarin's expert and not La Noue's. The record points to the conclusion that the jury followed a permissible path from evidence in the record of cost of repair, through the instructions given, to its award of damages. *Cf. Jensen*, 336 Or at 240 (Where "the jury instructions gave the jury two possible grounds for imposing liability," one based on an erroneous instruction and the other not, defendant "c[ould] not demonstrate that the verdict was based on the erroneous instruction \*\*\*, rather than on the correct \*\*\* instruction."). We cannot say that the error in this case "skewed the odds against a legally correct result" to such an extent that the trial court judgment should be disturbed. *See Purdy*, 355 Or at 226; *Shoup* 335 Or at 173 (under ORS 19.415(2), an "error must cause something more than the 'possibility' of a different result" and is "not merely one that 'might' have changed the outcome of the case"). Because La Noue has not met its burden under ORS 19.415(2), we conclude that the instructional error was harmless.

### III.   ATTORNEY FEES

In La Noue's third-party complaint against Sharabarin, La Noue sought the attorney fees that it had incurred defending the first-party claim by the homeowners against La Noue. La Noue argued that those attorney fees were recoverable as consequential damages of Sharabarin's breach of contract. The trial court made two rulings on that issue, one before trial and one after trial. We address those rulings separately.

Before the trial began on La Noue's breach of contract claim against Sharabarin, there was a dispute over whether

La Noue could seek, as consequential damages, attorney fees that it had incurred defending against the homeowners' claims. Sharabarin argued that those fees could be recovered only under the procedure set out in ORCEP 68, while La Noue asserted that the fee issue should be presented to the jury as part of its claim for damages caused by Sharabarin's breach of contract. Although we briefly discuss below the *substantive* basis for La Noue's claim, the narrow issue for decision here is the proper procedure for La Noue to assert that fee claim. We note that the usual ORCP 68 attorney fee claim is one in which a party that has prevailed in a proceeding against another party—and that has a contractual or statutory right to attorney fees as the prevailing party— files a claim for those fees. This case presents the unusual variant of a defendant that incurs attorney fees in an action brought by a plaintiff, files a third-party claim in the same action, and, as part of its damages claim against the third-party defendant, seeks recovery of those first-party fees. We are unaware of reported Oregon cases in this posture, although, as we discuss below, courts in other states have considered whether a third-party plaintiff can seek attorney fees against third-party defendants that the third-party plaintiff incurred in defending against first-party claims in the same action.

With that background, we turn to the dispute over the application of ORCP 68.[8] The ORCP 68 procedure for

---

[8] In relevant part, ORCP 68 provides:

"C(1) Application of this section to award of attorney fees. *** [T]his section governs the pleading, proof, and award of attorney fees in all cases, regardless of the source of the right to recover such fees, except when:

"C(1)(a) Such items are claimed as damages arising prior to the action;
"*****

"C(3) Proof. The items of attorney fees and costs and disbursements shall be submitted in the manner provided by subsection (4) of this section, without proof being offered during the trial.

"C(4) Procedure for seeking attorney fees or costs and disbursements. The procedure for seeking attorney fees or costs and disbursements shall be as follows:

"C(4)(a) *** A party seeking attorney fees or costs and disbursements shall, not later than 14 days after entry of judgment *** [f]ile with the court a signed and detailed statement of the amount of attorney fees or costs and disbursements[.]
"*****

recovering attorney fees, with limited exceptions set out in the rule, "governs the pleading, proof, and award of attorney fees *in all cases*, *regardless of the source of the right to recover* such fees." ORCP 68 C(1) (emphasis added). The rule provides an exception when the fees "are claimed as damages *arising prior to the action.*" ORCP 68 C(1)(a) (emphasis added). When ORCP 68 applies, the party seeking the fees must first allege the right to attorney fees in a pleading, motion, or response, and then file a detailed statement of the amount of attorney fees within 14 days after entry of judgment. ORCP 68 C. Thus, proof of attorney fees is ordinarily not part of the trial itself, but rather is presented in a post-trial proceeding, which may involve a court hearing without a jury. ORCP 68 C(3), (4)(e)(i).

La Noue argues that its claim for the fees that it incurred in defending against the homeowners' complaint is not subject to ORCP 68 procedure because it comes within the ORCP 68 C(1)(a) exception for fees "arising prior to the action." In the trial court, La Noue argued that those fees arose prior to the trial on La Noue's claims against Sharabarin because La Noue had already settled the homeowners' claims before the trial of La Noue's third-party claims against Sharabarin and they were thus part of a "separate and distinct action." La Noue sought to present evidence of those attorney fees to the jury as consequential damages from Sharabarin's breach of contract. Sharabarin objected, arguing that ORCP 68 covers all claims for attorney fees in an action "regardless of the source of the right to recover those fees," ORCP 68 C(1), and that La Noue's fee request was subject to the post-trial procedure of ORCP 68 C(4). Sharabarin asserted to that "this is all part of one action, *** one caption, one case number" and "a separate action [is] required for attorney fees to be counted as damages in a case such as this." At oral argument on that dispute, the trial court observed that Sharabarin's position would allow a party to claim the attorney fees in a subsequent action, but "another party who [seeks the fees in the same action] is *precluded* from those very same damages."

---

"C(4)(e)(i)  If a hearing is requested the court, without a jury, shall hear and determine all issues of law and fact raised by the objection."

(Emphases omitted.)

(Emphasis added.) Sharabarin responded that La Noue was "not precluded" and agreed that it "would be entitled to argue [those damages] at a later time," presumably using the post-trial procedures of ORCP 68.

At that pretrial stage, the trial court was concerned that if it did not allow La Noue to present evidence of the attorney fees as consequential damages for Sharabarin's alleged breach of contract to the jury, then La Noue would be "precluded" from pursuing that component of its damages at all. But the trial court apparently accepted Sharabarin's acknowledgement that the ORCP 68 procedure would allow La Noue to seek those damages after trial and thus not "preclude" La Noue from recovering any damages to which it would otherwise be entitled. On that basis, the trial court held that La Noue could not present evidence to the jury of the attorney fees that it incurred defending against the homeowners' claims, but that La Noue could seek those attorney fees post-trial using the ORCP 68 procedure.[9] The Court of Appeals agreed with the trial court that whatever damages arose from the homeowners' claims against La Noue did not "aris[e] prior to the action," ORCP 68 C(1)(a), because those claims and La Noue's third-party claims against Sharabarin were part of the same action. *Montara*, 259 Or App at 683. On review, La Noue reprises its arguments below.

La Noue's argument turns on whether its claim comes within the exception for fees and other expenses that "are claimed as damages arising prior to the action." ORCP 68 C(1)(a). Although the word "action" is not defined in the rules, rules other than ORCP 68 make it clear that first-party claims, such as the homeowners' claims against La Noue, and third-party claims, such as La Noue's against Sharabarin and other subcontractors, are part of the same "action." ORCP 22 C(1), in discussing third-party practice, refers to both first and third-party claims as part of "the

---

[9] While the trial court's ruling was not entirely clear, that appears to be the intent of its pretrial ruling. The court ultimately declared that it was ruling "with the defense on this" and characterized the defense's position as being that this was "something that would be argued at the time of, perhaps, the attorney fee decision made by the court at the end of the case as opposed to an element of damage that goes to the jury."

action." Additionally, ORCP 67 B provides that, "[w]hen more than one claim for relief is presented in *an action*, whether as a claim, counterclaim, cross-claim, *or third party claim*, \* \* \* the court may render a limited judgment as to one or more but fewer than all of the claims or parties." (Emphasis added.)

The conclusion that fees incurred in the same action are not fees "arising prior to the action" is consistent with the Council on Court Procedure's comment on ORCP 68. The comment notes that the rule was "designed to provide a procedure for claiming and proving attorney fees which are an incident of the action." For that reason, the Council stated, "*pre-existing* attorney fees which are actually claimed as damages are excluded." Council on Court Procedures, Oregon Rules of Civil Procedure and Amendments, Rule 68 comment, at 22 (December 13, 1980) (emphasis added). The comment thus emphasizes the distinction between fees that are "an incident of the action," which are subject to ORCP 68, and "pre-existing" fees—those that "existed" prior to the action—that are not.

We conclude that the first- and third-party claims in this case were part of the same "action" and, consequently, that ORCP 68 provided the procedure for seeking an award of those attorney fees. We acknowledge that the ORCP 68 procedure seems to have been adopted with an eye toward resolving a claim by a prevailing party against a non-prevailing party for attorney fees incurred in the litigation between those two parties. However, the text of the rule is sufficiently expansive to encompass claims for fees incurred in the same action, because they did not "arise prior to the action."[10] We therefore affirm the trial court's pretrial decision not to send La Noue's claim for attorney

---

[10] There is a potential dispute about the meaning of the word "arising" in ORCP 68 C(1)(a). "[A]rising prior to the action" could have at least two different meanings: that the fees had been *partially* incurred prior to the action, or that they had been *fully* incurred prior to the action. On the one hand, that phrase could include those attorney fees that are being incurred on an ongoing basis at the time the action begins, regardless of whether more attorney fees are yet to be incurred. Alternatively, "arising prior to the action" could mean that the prior proceeding that gave rise to the attorney fees had been concluded before the action in which the fees are sought is filed, so that the amount of the fees can be determined. Because the fee issue in this case comes up in the context of a single action, we do not address the issue of the potential meanings of "arising."

fees to the jury and to defer ruling on that claim until after trial.[11]

The trial court's *post-trial* ruling denying La Noue's claim for those attorney fees presents different issues.[12] After the jury trial, as part of a series of post-trial hearings, La Noue again requested as damages the attorney fees that it had incurred in defending the first-party claims by the homeowners. The court's written ruling stated that the court denied La Noue's claim "because its attorney fees were incurred in the same action in which La Noue made third-party claims against the Subcontractors[, and t]he recovery of attorneys' fees as consequential damages in a breach of contract claim is predicated on those fees having been incurred in a prior separate action." In its oral ruling, the court further stated:

> "As to whether or not there are consequential damages that will be allowed in terms of the attorney fees that were accrued or incurred, I find that this is a different situation from the situation in many prior cases which can hold attorney fees can be consequential damages.

> "Unlike the situation in those cases, this is not a situation in which there was earlier or separate litigation with a third party. That is invariably the context in which this discussion occurs, rather than the context which has presented itself here in this case, which is the presence of a single case in which there was a settlement that was made with a number of the parties and in which litigation then continued against remaining parties. There was, therefore, no prior litigation which resulted in attorney fees that might be recoverable as consequential damages, and I couldn't find any cases that would suggest that this is so."

In those oral and written post-trial rulings, it appears that the trial court was referring to arguments made by the parties based on both ORCP 68 and *Huffstutter*

---

[11] The parties have not raised any argument that the trial court violated the Oregon Constitution when it concluded that La Noue could not submit that aspect of its damages case to the jury. *See* Or Const, Art I, § 17 ("In all civil cases the right of Trial by Jury shall remain inviolate."); Or Const, Art VII (Amended), § 3 ("In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved[.]").

[12] As discussed further below, La Noue did not use the procedure set out in ORCP 68 to seek those fees.

*v. Lind*, 250 Or 295, 301, 442 P2d 227 (1968), and we address both of those sources of law below. The Court of Appeals acknowledged that La Noue "might have" some "substantive entitlement" to the attorney fees incurred in defending against the homeowners' claims, but nonetheless affirmed the trial court because, in contrast to the situation in *Huffstutter*, there was "no prior litigation with a third party." *Montara*, 259 Or App at 683; *see Huffstutter*, 250 Or at 301 ("[A]ttorney fees are generally allowable as damages in an action against a defendant where the defendant's tortious or wrongful conduct involved the plaintiff *in prior litigation* with a third party." (Emphasis added.)).

The legal basis on which the trial court rejected La Noue's post-trial request for attorney fees was not clear. If the post-trial ruling was based on the trial court's conclusion that it could not consider the substance of La Noue's request under ORCP 68, that ruling was erroneous. ORCP 68 was not intended to affect any substantive right of a party to attorney fees as consequential damages for a breach of contract. *See* ORCP 68 C(1) (distinguishing procedure for "the pleading, proof, and award of attorney fees" from "the source of the right to recover such fees"); Council on Court Procedures, Oregon Rules of Civil Procedure and Amendments, Rule 68 comment, at 21 (December 13, 1980) ("[T]he rule *simply provides a procedure* for assessing such fees no matter what source is relied upon as providing the right to such fees." (Emphasis added.)). Moreover, the trial court's *pretrial* ruling denying La Noue's request to put on evidence of attorney fees as part of its damages case against Sharabarian apparently was predicated in part on its view that La Noue would be able to seek those fees in a post-trial proceeding. As we have held, that ruling was correct. Insofar as the trial court's *post-trial* ruling denying the attorney fee claim relied upon the conclusion that the fees were not "claimed as damages arising prior to the action" under ORCP 68 C(1)(a), it was error.[13]

---

[13] We recognize that La Noue did not use the ORCP 68 procedure in its post-trial attorney fee request for the attorney fees incurred in defending the homeowners' claims. However, we agree with La Noue's assertion at oral argument before this court that seeking those attorney fees again in their ORCP 68 filing would have been futile, given the trial court's post-trial ruling denying La Noue's claim for those fees as consequential damages because they had been incurred in the same action.

We also conclude that the trial court and Court of Appeals read *Huffstutter* too narrowly when they concluded that it did not apply unless the attorney fees claimed were incurred in separate, earlier litigation. Under the so-called American rule regarding the award of attorney fees, "Generally, a party cannot recover attorney fees unless there is a statute or a contract that authorizes recovery of those fees." *Peace River Seed Co-Op, Ltd. v. Proseeds Marketing, Inc.*, 355 Or 44, 65, 322 P3d 531 (2014). La Noue lacked any statutory or contractual basis for the recovery of any attorney fees.[14] *Huffstutter*, however, recognized a third-party litigation exception to the American rule in the circumstances when attorney fees are claimed as consequential damages.[15] *Huffstutter* held that, although "[i]n the absence of contract, attorney fees are allowable only where there is statutory authority," there is an exception to that rule, whereby "attorney fees are generally allowable as damages in an action against a defendant where the defendant's tortious or wrongful conduct involved the plaintiff in prior litigation with a third party." 250 Or at 301; *see also OnePoint Solutions, LLC v. Borchert*, 486 F3d 342, 352 (8th Cir 2007) ("[U]nder the third-party litigation exception to the American Rule * * * a court may award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party." (Internal quotation omitted.)).

---

[14] The only reference to attorney fees in La Noue's contract with Sharabarin was in the contractual indemnification clause, which provided that "[i]n the event of litigation between [Sharabarin] and [La Noue] to enforce the rights under this subparagraph (o) [relating to indemnification], reasonable attorneys' fees shall be allowed to the prevailing party." Because Sharabarin was the "prevailing party" on the issue of contractual indemnification, the only contractual basis available for recovering attorney fees, La Noue could not argue that the contract authorized recovery of these attorney fees. *See* ORS 20.077 (establishing process to determine prevailing party for purpose of attorney fee award). As discussed above, however, the trial court erred in deciding the contractual indemnification claim, and that claim will be the subject of further proceedings on remand.

[15] The third-party litigation exception to the American rule has been adopted by almost every jurisdiction in the United States. Robert Rossi, 1 *Attorneys' Fees* § 8:3, 9 (3d ed 2014) (identifying Arkansas and North Carolina as only states that have declined to adopt the doctrine). It might be more accurate to say that a claim for attorney fees as consequential damages for another party's wrongful conduct is simply a situation in which the American rule does not apply, rather than an "exception" to the rule.

Although the court in *Huffstutter* referred to attorney fees incurred in "prior litigation" with a third party, it did so because of the procedural posture of that case. The gravamen of the case was not that the fees must have been incurred in a prior case, but rather that the American rule does not apply when a plaintiff seeks attorney fees as consequential damages on the theory that "the defendant's tortious or wrongful conduct" involved the plaintiff in litigation with a third party. 250 Or at 301. That holding is consistent with other authorities cited in *Huffstutter* recognizing that such attorney fees can be claimed as damages, and we followed *Huffstutter* in *Osborne v. Hay*, 284 Or 133, 585 P2d 674 (1978). Both *Huffstutter* and *Osborne* discussed claims for attorney fees as consequential damages in tort cases, but the rule has also been applied in appropriate contract cases. When "a breach of contract results in claims by third persons against the injured party," the breaching party is liable for the injured party's "reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures as the probable result of his breach at the time he made the contract." *Restatement (Second) of Contracts* § 351 comment c; *see also Raymond v. Feldmann*, 124 Or App 543, 546, 863 P2d 1269 (1993) (collecting cases and treatises describing the third-party litigation exception).

Whether those damages arose in a separate, earlier case or in the same action in which a party seeks them will determine only the *procedure* for asserting a claim for those fees—either by presenting evidence at trial on the merits or by using the post-trial procedure established by ORCP 68—but it will not determine whether a party has any substantive right to those fees. Cases from other jurisdictions have acknowledged that, although ordinarily a plaintiff that asserts a claim for attorney fees as a component of damages for a defendant's wrongdoing will do so in a separate lawsuit from that in which the fees were incurred, nothing prevents those attorney fees from being claimed in the same action. *See Prentice v. North Am. Title Guar. Corp., Alameda Div.*, 59 Cal 2d 618, 621, 381 P2d 645 (1963) ("In the usual case, the attorney's fees will have been incurred in connection with a prior action; but there is no reason why recovery of such fees should be denied simply because the two causes

(the one against the third person and the one against the party whose breach of duty made it necessary for the plaintiff to sue the third person) are tried in the same court at the same time."); *M.F. Roach Co. v. Town of Provincetown*, 355 Mass 731, 733, 247 NE2d 377, 378 (1969) (same).

Nothing in our rules or case law suggests that a different result would obtain here. Indeed, one of the cases cited by *Huffstutter* involved a claim for fees that were incurred in the same action rather than a separate and earlier action. 250 Or at 301 (citing *Prentice*, 59 Cal 2d at 621). In the usual case, previously incurred attorney fees are sought in a separate action against the wrongdoer. In those cases, the ORCP 68 procedure for seeking attorney fees post-trial does not apply because of the exception in ORCP 68 C(1)(a) for fees and other expenses "arising prior to the action." But if a party chooses to seek those fees in the same action in which it incurred them—as La Noue has done here—it may do so, although the party will need to follow the ORCP 68 procedure.

The Court of Appeals affirmed the trial court and rejected La Noue's attorney fee claim because the fees did "not originate from prior litigation with a third party." *Montara*, 259 Or App at 683. For the reasons set out above, we disagree. Like the courts in *Prentice* and *M.F. Roach,* we conclude that a party may seek attorney fees under the third-party litigation exception, even if the party incurs those fees in the same action. Our holding is limited to reversing the lower court rulings that La Noue was precluded from seeking attorney fees as part of its damages, and we express no opinion as to the substantive merits of La Noue's claim. Because the trial court concluded that La Noue could not pursue its claim for attorney fees, the parties did not develop and the trial court did not rule on the legal and factual grounds for establishing, or the potential limitations on, such a claim.[16]

---

[16] Oregon has relatively little case law on the requirements that must be met for a party in La Noue's position to prevail on its attorney fee claim. One treatise summarizes the requirements as follows:

"[The party seeking to recover attorneys' fees under this doctrine must establish:]"

We conclude that La Noue may use the ORCP 68 procedure to seek from Sharabarin, as consequential damages of Sharabarin's breach of contract, attorney fees that La Noue incurred in defending against the homeowners' claims in the first-party action. We remand to the trial court for further proceedings to determine whether La Noue meets the requirements to recover those fees and, if it does, to determine the appropriate amount of the fee award.

## IV.   CONCLUSION

In summary, we hold that ORS 30.140 allows for partial invalidation of overbroad indemnity clauses in construction contracts. As to La Noue's claim for contractual indemnity, we therefore affirm the decision of the Court of Appeals, reverse the judgment of the circuit court, and remand the case to the circuit court for further proceedings. With respect to the instruction on damages, we reverse the decision of the Court of Appeals and affirm the trial court because, although we conclude that it was error for the trial court to instruct on diminution in value as a measure of damages when there was no evidence on diminution in value, that error was harmless. Finally, we reverse the Court of Appeals decision on attorney fees. We affirm the trial court's pretrial ruling that the ORCP 68 procedure applies to La Noue's claim for attorney fees that it alleges as consequential damages for Sharabarin's breach of contract, but reverse the post-trial denial of that claim and remand for further proceedings.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court

---

"(1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct; that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement; (2) that the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) that the fees and expenses which were incurred were the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery; in other words, the attorneys' fees sought to be recovered must have been proximately and necessarily caused by the act complained of."

Rossi, 1 *Attorneys' Fees* § 8:3 at 10-13.

is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.